519 P.2d 53

**STATE of Arizona, Appellee,**

v.

**Dennis Patrick ATTEBERY, Appellant.**

**No. 2703.**

Supreme Court of Arizona,
In Banc.

Feb. 21, 1974.

Rehearing Denied March 19, 1974.

Gary K. Nelson, Atty. Gen., by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Rudy Gerber, Deputy Public Defender, Phoenix, for appellent.

STRUCKMEYER, Justice.

Appellant, Dennis Patrick Attebery, was charged with and, after a trial to the court, was convicted of the crime of rape of his 10-year-old sister-in-law, a non-Indian. The offense was committed west of Phoenix, Arizona within the boundaries of the Gila River Indian Reservation. On this appeal, appellant first urges that the State court lacked jurisdiction over the offense because he is part Indian.

Under 18 U.S.C.A., § 1153, any Indian who commits rape within the Indian country is subject exclusively to the criminal jurisdiction of the United States. Appellant testified that his father was part Cherokee Indian, "about half," but that he had never been to any of the reservations where the Cherokees lived. Although his father lived on a Cherokee reservation in Oklahoma, neither he nor his father had ever lived on the Gila River Indian Reservation. In fact, the only Indian reservation on which appellant had ever lived was the Apache Reservation, and that for only three months, at White River, Arizona in 1968.

The test for Indian status was recently set forth in Makah Indian Tribe v. Clallam County, 73 Wash.2d 677, 440 P.2d 442 (1968). There, the Washington Court concluded "[s]ince 1846—and perhaps earlier—the test of Indian status has depended primarily on two things (a) a substantial percentage of Indian blood and (b) recognition as an Indian." Here, if we assume that appellant has a substantial percentage of Indian blood, it nonetheless is clear that he has never had recognition as an Indian.

"While there was evidence that defendant and the victim were "Indians," the use of this term, without more, shows only that the persons were Indian by race and blood. That fact in insufficient to vest in the federal government exclusive jurisdiction over a crime committed in Indian country, because such jurisdiction does not exist when the crime involves Indians who have been emancipated in some manner, as, *for example, by severing tribal relations and taking on civilized habits* or by receiving a conveyance of allotted lands by patent in fee from the federal government. 25 U.S.C.A. § 349; Eugene Sol Louie v. United States, 9 Cir., 274 F. 47, 49 (murder) ; People v. Ketchum, 73 Cal. 635, 638–639, 15 P. 353 (recognizing the principle but not indicating whether the murder involved was committed in Indian country); State v. Bush, 195 Minn. 413, 263 N.W. 300, 302–303; State v. Campbell, 53 Minn. 354, 55 N.W. 553, 554, 21 L.R.A. 169; State v. Monroe, 83 Mont. 556, 274 P. 840, 842–843 (manslaughter); People ex rel. Schuyler v. Livingstone, 123 Misc. 605, 205 N.Y.S. 888, 894–895; State v. Nimrod, 30 S.D. 239, 138 N.W. 377, 378–379; State v. Howard, 33 Wash. 250, 74 P. 382, 384–385 (murder) ; see also State ex rel. Irvine v. District Court, 125 Mont. 398, 239 P.2d 272, 275 (burglary); State v. Big Sheep, 75 Mont. 219, 243 P. 1067, 1070, 1071. These cases are to the effect that an Indian who has become emancipated is to be treated like any non-Indian for the purposes of jurisdiction in a case such as this, * * * ."

**356**

People v. Carmen, 43 Cal.2d 342, 349–350, 273 P.2d 521, 525 (1954). (Emphasis supplied)

*And see* the connected case, Petition of Carmen (D.C.Cal., 1958); 165 F.Supp. 942, aff'd, Dickson v. Carmen (9th Cir., 1959), 270 F.2d 809, cert. den. 361 U.S. 934, 80 S. Ct. 375, 4 L.Ed.2d 355 (1960), reh. den. 361 U.S. 973, 80 S.Ct. 585, 4 L.Ed.2d 553 (1960).

■ We therefore are of the opinion that appellant is not an Indian within the purview of either the Ten Major Crimes Act, § 1153, or § 3242, Title 18, U.S.C.A. The jurisdiction of the federal government is derived from the fact that Indians are the wards thereof and dependent upon it until fully emancipated. When emancipated, an Indian is subject to the jurisdiction of the state in which the offense is committed; cf. State ex rel. Irvine v. District Court, 125 Mont. 398, 239 P.2d 272 (1951).

■ We therefore hold that appellant is a non-Indian within the contemplation of the federal enactments, and, as such, Arizona has jurisdiction to punish him for the rape of another non-Indian on the Gila River Indian Reservation. New York v. Martin, 326 U.S. 496, 66 S.Ct. 307, 90 L. Ed. 261 (1946).

■ The victim of this offense was a girl just under ten years of age at the time of trial. She was examined as to her competency by the trial judge, who found in accordance with the decision in Davis v. Weber, 93 Ariz. 312, 380 P.2d 608 (1963) that she was competent to testify. Appellant, without pointing out why the victim was not competent to testify, requests us to review her competency on this appeal. We have read the transcript of evidence and find nothing from which we could conclude that the trial court abused its discretion in admitting her testimony. State v. Parker, 106 Ariz. 54, 470 P.2d 461 (1970). The admission of her testimony was dependent upon the sound discretion of the trial judge.

■ Appellant asserts that because a deputy sheriff, one James Keppner, did not specifically ask him whether he wanted to consult an attorney or whether he was represented by counsel, he was not, in practical terms, fully informed of his rights. But we think appellant's rights were made abundantly clear to him. The transcript reveals that Keppner gave appellant a card upon which was printed the standard Miranda warnings and that appellant read the card aloud; that Keppner then took the card and read it aloud to him and then appellant signed the card after he had answered each of the statements on it. Keppner testified that appellant, while he appeared drowsy or sleeping, talked coherently and had no problem in understanding. The rebuttal testimony of Deputy Sheriff Keppner relating statements of appellant's which were inconsistent with his testimony at the trial constituted proper impeachment. State v. Johnson, 109 Ariz. 70, 505 P.2d 241 (1973).

■ Appellant contends that the trial court committed reversible error in failing to sua sponte order a psychiatric examination of appellant. This contention is predicated upon testimony of appellant's doctor, Warren Gorman, that appellant was afflicted with epilepsy and that it was possible the offense with which appellant was charged "could have taken place during the time of an episode of petit mal, non-convulsive seizure" but that he would have to make an examination "at a subsequent time to the present time" in order to determine whether he had a seizure at the time of the criminal episode.

This testimony does not require that the trial be suspended and that a further examination be made of appellant. Dr. Gorman did not testify that a petit mal seizure could cause criminal behavior. Nor did he testify that while under the influence of a seizure appellant would not know the nature and quality of his act or that what he was doing was wrong. State v. Shaw, 106 Ariz. 103, 471 P.2d 715 (1970).

■ Appellant's final argument is somewhat related to his last point in that he urges that the evidence shows that the of-

fense occurred while appellant was suffering an uncontrollable epileptic attack. He requests that this Court review the transcript with particular attention to the evidence suggesting that appellant may have been suffering from such a seizure. But, even assuming that appellant was suffering an epileptic seizure at a time when the offense was being committed, here, again, there was no testimony from which it could be inferred that the crime was the product of the mental condition brought about by the seizure.

Judgment affirmed.

HAYS, C. J., CAMERON, V. C. J. and LOCKWOOD and HOLOHAN, JJ., concur.