**Bertney LANGLEY, et al.,**
**Plaintiffs-Appellees,**

v.

**Alfred R. RYDER, etc., et al.,**
**Defendants-Appellants.**

No. 85–4225.

United States Court of Appeals,
Fifth Circuit.

Dec. 18, 1985.

Alfred R. Ryder, Errol D. Deshotels, Dist. Attys., Oberlin, La., pro se.

Carrol L. Spell, Ltd., Lafayette, La., for plaintiffs-appellees.

Before THORNBERRY, RUBIN and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

We are to determine on this appeal whether the district court properly concluded that the federal government, and not the state of Louisiana, has jurisdiction over the members of the Coushatta Tribe of Louisiana for crimes committed on Indian territory. Since we find that the lands in question are Indian country and that, as a general rule, the federal government has criminal jurisdiction over criminal activities by Indians in Indian country, and because we find that none of the exceptions to this general rule is applicable in this case, we affirm the judgment of the district court.

## I.

In 1984 the Sheriff of Allen Parish (sheriff) received complaints about alleged gambling operations (i.e. bingo games) being conducted on Indian property. The sheriff and representatives of the Coushatta Tribe met and agreed that the Coushatta Tribe, through its attorney, would petition the federal district court for a declaratory judgment of whether the state or federal government had jurisdiction over the tribe. Pending the judgment, the parties agreed that the sheriff would not interfere with the gambling operations and the Coushatta Tribe would not expand the gambling beyond the bingo game.

On August 30, 1984, the Coushatta Tribe filed suit in the district court, requesting that Louisiana be enjoined from exercising statutory licensing and tax laws on land belonging to the Coushatta Tribe of Louisiana. The tribe also sought a declaratory

judgment delineating the scope of permissible state regulation of Indian activity on tribal territory. After a hearing, the Coushatta Tribe withdrew its application for temporary and preliminary injunctive relief. The application for a permanent injunction and declaratory relief was referred to a trial on the merits. On January 16, 1985, the case was dismissed by the clerk pursuant to Rule 14 of the Local Rules of the Western District of Louisiana for lack of prosecution.

The sheriff soon received complaints that the gambling operations on the Coushatta Indian reservation had been expanded to include blackjack games, roulette-type gambling, video-type slot machines, and pull-tab cards, which would pay cash based on a slot-machine format. After investigating, the sheriff ordered the arrest of Bert Langley, Jack LeBlanc, Sharon Doise, Leonard Battise, Michael Pierotti, Patrick LeBlanc, Burl Sonnier, Wayne Doise and Debra Sonnier (the appellees) for conducting illegal gambling operations in violation of La.Rev.Stat. 14:90. In addition, in unrelated incidents, Lee David Poncho was arrested and charged with aggravated battery and Hilton Langley was arrested and charged with attempted second degree murder. The appellees arrested on gambling charges have moved to quash the arrest warrants in state court.

On January 4, 1985, the appellees filed a petition for injunctive relief in federal district court, seeking to restrain the Allen Parish officials from prosecuting the criminal charges. On that date, the district court issued a temporary restraining order and set the matter for hearing. On January 16, 1985, an entity claiming to be the Coushatta Tribe of Louisiana moved to intervene in the action in order to protect the Tribe's interests in the bingo operations. Shortly thereafter, several members of the Tribe filed an opposition to the petition for intervention, challenging the right of the intervenor to represent the Tribe and contending that the bingo operations were not officially authorized by the Tribe. The district court held a hearing on January 18, at which time the court dissolved the temporary restraining order and took the matter under advisement.

On February 12, the district court, in a cogent and comprehensive opinion, held that the federal, not state, government had jurisdiction over these lands. Louisiana filed a timely notice of appeal. We affirm the district court.

## II.

The sole issue on appeal is whether the federal or state government has criminal jurisdiction over crimes committed on the Indian lands in question. This answer turns, in part, on the legal status of the Coushatta Indian lands. Once we review the status of these lands, we will turn to a determination of jurisdiction.

## III.

### A.

The district court found that the lands in question, located in Allen Parish, were donated to the federal government in trust for the Coushatta Indian Tribe of Louisiana. The Secretary of the Interior, acting through the Bureau of Indian Affairs, accepted this donation. Acquiring land by donation to be held in trust is authorized by section 5 of the Indian Reorganization Act of 1934, 48 Stat. 985, codified at 25 U.S.C. § 465. This is an accurate statement of both the facts and the law.

The district court found, however, that these lands had never been proclaimed a reservation under section 7 of the Act, 48 Stat. 986, codified at 25 U.S.C. § 467. Because the court concluded that the lands were not a reservation, it found that the question in this case was whether lands held in trust by the United States for a recognized Indian tribe but not proclaimed to be a reservation by the Secretary of the Interior constitute "Indian country" for purposes of criminal jurisdiction under section 1153. If the lands were "Indian country," then the federal government had jurisdiction.

The district court found two reasons why the lands in question were Indian country, even though the lands had not been proclaimed a reservation pursuant to 25 U.S.C. § 467. First, the Coushatta Indians' lands appear to fall within the statutory definition of "Indian country" in section 1153, which states that "all land within the limits of any Indian reservation under the jurisdiction of the United States Government" is Indian country. 18 U.S.C. § 1151(a). Second, the Supreme Court in *United States v. John*, 437 U.S. 634, 98 S.Ct. 2541, 57 L.Ed.2d 489 (1978) held that lands acquired by the United States in trust for the Mississippi Choctaw Tribe and proclaimed to be a reservation by the Assistant Secretary of the Department of Interior were properly defined as Indian country. Furthermore, the Court noted that the lands could legally have been considered a reservation *prior* to the official proclamation of reservation status so long as they "were declared by Congress to be held in trust by the federal government for the benefit of the Mississippi Choctaw Indians who were at that time under federal supervision." *Id.*, 98 S.Ct. at 2549. Thus, the Court held that lands held in trust by the United States for tribes are "Indian country" within the meaning of the statute, even if there has been no official proclamation of reservation status. *Cheyenne-Arapaho Tribes of Oklahoma v. State of Oklahoma*, 618 F.2d 665, 668 (10th Cir.1980). Applying this statement to the instant case, the district court concluded that the Coushatta Indian lands held in trust could legally be considered a reservation and thus federal jurisdiction attached.

■ The Coushatta Indians, the appellees, disagree with the district court on the status of the lands. The Coushatta Indians assert that the lands in question were accepted into trust by official proclamation of

the Secretary of the Interior on May 27, 1975, and that these lands were declared to be an Indian reservation on March 14, 1975 for the use and benefit of the Coushatta Tribe of Louisiana. *See* 40 Fed.Reg. 24220 (1975). This proclamation clearly states that the lands in question were proclaimed to be a reservation as of March 14, 1975. The district court's finding that the lands had not been proclaimed a reservation was in error. Regardless, however, whether the lands are merely held in trust for the Indians or whether the lands have officially been proclaimed a reservation, the lands are clearly Indian country and the district court's conclusion was correct.

## B.

■ Having concluded that the lands in question are Indian country, we turn to whether the state or federal government has criminal jurisdiction. Louisiana, the appellant, does not appear to care which branch of government has jurisdiction over the Indians so long as the issue is clarified. In fact, Louisiana has not advocated a position on this question in its brief.[1] The Coushatta Indians, however, strenuously argue that the federal government has jurisdiction over these lands. We agree.

■ Under 18 U.S.C. § 1151(a), "Indian country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States government." Once land is determined to be Indian country, state criminal jurisdiction is preempted by both federal protection of tribal self-government and federal statutes on subjects relating to Indians, tribes, their property and federal programs. *United States v. Mazurie*, 419 U.S. 544, 95 S.Ct. 710, 717, 42 L.Ed.2d 706, (1975). Federal protection of tribal self-government pre-

---

1. Louisiana's sole concern appears to be having its duty clarified. Currently, a $50 million claim for damages is pending against the sheriff and his deputy. The appellees, who filed this suit, are contending that the sheriff and his deputy violated the appellees' civil rights by arresting them on charges of conducting an illegal gambling operation. Louisiana is con-

cerned that if it agrees with the appellees and simply refuses to prosecute future violations of the law by Indians, persons damaged by such violations could file a damage suit against state officials for failure to act. Thus, Louisiana would like the court to remove it from the "horns of a dilemma," although it appears to have no preference as to how this is done.

cludes criminal jurisdiction of state courts over Indians or their property absent the consent of Congress. *Fisher v. District Court*, 424 U.S. 382, 386, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976). Thus, as a general rule, states have no jurisdiction within Indian country. *Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 270–71, 3 L.Ed.2d 251 (1959).[2] In order for a state to exercise criminal jurisdiction within Indian country there must be clear and unequivocal grant of that authority. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 208 n. 17, 98 S.Ct. 1011, 1020, 55 L.Ed.2d 209 (1978).

The Coushatta Tribe is a federally recognized tribe under federal supervision. The twenty-acre tract from which the bingo game was operated was taken into trust by the Secretary of the Interior under authority conferred by Congress. As in *John*, the federal government alone could exercise criminal jurisdiction. The only remaining question is whether there has been a "clear and unequivocal grant" of criminal jurisdiction to Louisiana so that the general rule of federal jurisdiction is not applicable.

### C.

Public Law 83–280 (P.L.280) grants criminal jurisdiction to states over Indian country under certain circumstances, and is the primary exception to the general rule of federal jurisdiction over Indian country. None of the parties, however, contends that P.L. 280 is applicable in the instant case. We agree with this assessment as P.L. 280 allows only authorized states to exercise delegated jurisdiction over Indian country, and assumption of jurisdiction is contingent on tribal acceptance of state jurisdiction. Louisiana has never been authorized to exercise jurisdiction within Indian country.

### IV.

Since Louisiana is *not* a P.L. 280 state, there is no effective congressional grant of

jurisdiction to Louisiana within Indian country. Thus, the general rule that the federal, not state, government has criminal jurisdiction over Indian lands applies. For these reasons, the judgment of the district court is

AFFIRMED.

---

**2.** The rule of federal preemption is more specific as to the aggravated battery charge against Lee David Poncho and the attempted second degree murder charge against Hilton Langley. The Major Crimes Act, 18 U.S.C. § 1153 (1982), provides a basis for federal prosecution of both

Poncho and Langley, and § 1153 preempts state jurisdiction. *See United States v. John*, 437 U.S. 634, 651–54, 98 S.Ct. 2541, 2550–51, 57 L.Ed.2d 489 (1978). Therefore, Louisiana has no jurisdiction to prosecute Poncho or Langley.