756 P.2d 324

**STATE of Arizona, Appellant,**

v.

**Conrad Marion FLINT, Appellee.**

**No. 1 CA–CR 10650.**

Court of Appeals of Arizona,
Division 1, Department B.

Jan. 19, 1988.

Review Denied July 2, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Paul J. McMurdie, Asst. Atty. Gen., Phoenix, for appellant.

David J. Martin, Navajo County Public Defender, Holbrook, for appellee.

OPINION

GREER, Judge.

Appellee Flint was charged by indictment in Navajo County with four counts of oral sexual contact with a minor and four counts of commercial sexual exploitation of a minor. In a separate indictment, he was charged with six counts of oral sexual contact with a minor and two counts of commercial sexual exploitation of a minor. Since the jurisdiction issue was not raised at trial by either party, the trial judge requested memoranda and oral argument. On July 30, 1986, the court heard oral argument on the issue of jurisdiction and, on August 7, 1986, ruling that it did not have jurisdiction, ordered dismissal of both indictments. The state filed a timely notice of appeal from the dismissal.

The only question the state raises on appeal is whether the trial court erred by dismissing the action on the grounds that the state court has no criminal jurisdiction where a non-Indian allegedly commits a crime against an Indian on the reservation. The state does not deny federal jurisdiction, but argues, without supporting authority, that the state and federal courts have concurrent jurisdiction. Defendant, on the other hand, argues that federal jurisdiction is exclusive. We agree with defendant's position.

228

The Indian Country Crimes Act, 18 U.S. C. § 1152, provides:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

The terms of this act include all offenses by non-Indians in Indian country. *See* F. Cohen, *Handbook of Federal Indian Law* 298 (1982 ed.) (Cohen). The United States Supreme Court carved out an exception to 18 U.S.C. § 1152 for offenses committed by non-Indians against non-Indians within Indian country. *United States v. McBratney,* 104 U.S. (14 Otto) 621, 26 L.Ed. 869 (1881). However, criminal offenses by non-Indians against Indians or their property remain subject to federal jurisdiction pursuant to the Indian Country Crimes Act. "The Supreme Court has stated that federal court jurisdiction under this Act is exclusive of state court jurisdiction." Cohen, at 353, *citing Williams v. Lee,* 358 U.S. 217, 220 n. 5, 79 S.Ct. 269, 270 n. 5, 3 L.Ed.2d 251 (1959); *Williams v. United States,* 327 U.S. 711, 714, 66 S.Ct. 778, 779–80, 90 L.Ed. 962 (1946).

> The general rule *outside Indian affairs* is that the state and federal governments may separately punish the same conduct. *Abbate v. United States,* 359 U.S. 187 [79 S.Ct. 666, 3 L.Ed.2d 729] (1959). In certain areas Congress has preempted state jurisdiction. *E.g., Pennsylvania v. Nelson,* 350 U.S. 497 [76 S.Ct. 477, 100 L.Ed. 640] (1956). *Indian affairs has long been an area of broad federal preemption, see* [Cohen, Ch. 5, Sec. B] and that factor alone is sufficient to conclude that the states cannot punish

Indian defendants in Indian country. *See United States v. Kagama,* 118 U.S. 375 [6 S.Ct. 1109, 30 L.Ed. 228] (1886). When a defendant is not Indian, traditional law from other fields might suggest that concurrent state and federal jurisdiction exists. But this traditional assumption is based on the typical situation where the state and federal governments seek to vindicate distinct governmental interests. The assumption has not been tested where both governments might seek to punish the same common law felony; in those circumstances, concurrent jurisdiction would be particularly troublesome. The potential for this problem arises in federal enclaves under concurrent jurisdiction. *See United States v. State Tax Comm'n,* 412 U.S. 363 [93 S.Ct. 2183, 37 L.Ed.2d 1] (1973). Congress is aware of this problem, and current drafts of a revised federal criminal code propose that federal court jurisdiction over concurrent enclaves would be deemed preemptive over common law felonies but not other crimes. *See* S. 1722, 96th Cong., 2d Sess. § 206 (1979). These considerations suggest that the exclusive jurisdiction ... is correct, but there may be concurrent state jurisdiction over a non-Indian defendant when there are victims of both races or in the class of "victimless" cases ...

Cohen, at 353 n. 44 (emphasis added).

In *Williams v. United States,* 327 U.S. 711, 714, 66 S.Ct. 778, 780, 90 L.Ed. 962 (1946), a non-Indian man was accused of having sexual intercourse with an underage Indian girl on the reservation; the United States Supreme Court preliminarily noted:

> While the laws and courts of the State of Arizona may have jurisdiction over offenses committed on this reservation between persons who are not Indians, *the laws and courts of the United States, rather than those of Arizona, have jurisdiction over offenses committed there, as in this case, by one who is not an Indian against one who is an Indian.*

(Emphasis added.)

The state suggests that this language is mere dicta, unnecessary to sustain the

judgment of the court. *Arizona Corp. Comm'n v. Mountain States Tel. & Tel. Co.,* 71 Ariz. 404, 228 P.2d 749 (1951). In *Williams,* the United States Supreme Court had to consider its own jurisdiction, but it did not have to consider whether Arizona and the federal courts had concurrent jurisdiction. While the language of *Williams* may have been dicta, it has not been seriously questioned. Cohen, at 353.

*Williams* cited *Donnelly v. United States,* 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913), which held that federal courts have jurisdiction where a non-Indian kills an Indian on a reservation within state boundaries, as the basis for the above-quoted proposition. *Donnelly* emphasized the protective purpose of federal jurisdiction and, in turn, cited *United States v. Kagama,* 118 U.S. 375, 383, 6 S.Ct. 1109, 1113, 30 L.Ed. 228 (1886), which found exclusive federal jurisdiction where both the defendant and the victim were Indian because "the Indian tribes are the wards of the nation." *Donnelly* held that the ward rationale supporting exclusive federal jurisdiction applied "perhaps *a fortiori*—with respect to crimes committed by white men against the person or property of the Indian tribes while occupying reservations set apart for the very purpose of segregating them from the whites and others not of Indian blood." 228 U.S. at 271–72, 33 S.Ct. at 459.[1]

Learned commentators on Indian law have also supported the result reached here. Cohen, at 298, states that *Donnelly* has consistently been followed and exclusive federal jurisdiction obtains where a non-Indian harms an Indian. Clinton, *Criminal Jurisdiction over Indian Lands: A Journey through a Jurisdictional Maze,* 18 Ariz.L.Rev. 503, 523 n. 94 (1976), noted that "[t]he prevailing rule today is that the federal jurisdiction conferred by [U.S.C.] sections 1152 and 1153 is

exclusive; where one of these sections applies, the state has no jurisdiction."

Two recent federal court of appeals cases specifically state that federal criminal jurisdiction is exclusive over crimes committed in Indian country affecting an Indian as either the defendant or victim. In *United States v. Torres,* 733 F.2d 449 (7th Cir.), *cert. denied,* 469 U.S. 864, 105 S.Ct. 204, 83 L.Ed.2d 135 (1984), the defendant Indians were charged with the murder of a non-Indian. The defendants argued that the conspiracy to commit the murder and kidnapping occurred on state land; therefore, jurisdiction lay in state court. The Seventh Circuit Court disagreed.

> It is equally clear, however, that *under 18 U.S.C. § 1152, the federal court has exclusive jurisdiction* to punish an Indian who participates in a conspiracy to murder a non-Indian within the federal territory of the Menominee Indian Reservation, provided that the Indian has not been punished by the tribe and the crime is not in the exclusive jurisdiction of the tribe. . . .

733 F.2d at 459 (emphasis added).

*Langley v. Ryder,* 778 F.2d 1092 (5th Cir.1985), generally held:

> Once land is determined to be Indian country, state criminal jurisdiction is preempted by both federal protection of tribal self-government and federal statutes on subjects relating to Indians, tribes, their property and federal programs [citation omitted]. Federal protection of tribal self-government precludes criminal jurisdiction of state courts over Indians on their property absent the consent of Congress. [Citation omitted.] In order for a state to exercise criminal jurisdiction within Indian country there must be clear and unequivocal grant of that authority.

---

1. There is little case law on the subject, probably because the issue has been thought to be well-settled. In several cases involving Indians or Indian reservations where there has been a question of jurisdiction, the courts have noted the general scheme for criminal jurisdiction over crimes committed on the reservation and have stated that, absent federal law to the contrary, where non-Indians commit crimes against Indians on a reservation, they are subject to *federal* jurisdiction. *E.g., Mull v. United States,* 402 F.2d 571 (9th Cir.1968); *United States v. John,* 587 F.2d 683, 686 (5th Cir.1979); *United States v. Johnson,* 637 F.2d 1224 (9th Cir.1980).

778 F.2d at 1095–96 (emphasis added). The Fifth Circuit Court noted that, pursuant to Pub.L. 83–280 (25 U.S.C. § 1321), Congress granted certain states the power to exercise criminal jurisdiction within Indian land, but held that, because "Louisiana is not a P.L. 280 state, there is no effective Congressional grant of jurisdiction to Louisiana within Indian country. Thus the general rule that the federal, not the state government, has criminal jurisdiction over Indian lands applies." *Id.* at 1096.

We find the cases discussing state criminal jurisdiction pursuant to acts of Congress or Pub.L. 83–280 persuasive. Pub.L. 83–280 specifically grants certain states broad criminal jurisdiction over offenses committed by or against Indians on Indian land within state boundaries. *See* 18 U.S.C. § 1162(a) (Alaska, California, Minnesota, Nebraska, Oregon and Wisconsin were expressly granted criminal jurisdiction over offenses committed within specified Indian country). Congress has also made separate grants of state criminal jurisdiction to individual states. For example, 18 U.S.C. § 3243 specifically authorized Kansas to have concurrent criminal jurisdiction with the federal courts over Indian reservations in that state. *See Iowa Tribe of Indians v. Kansas,* 787 F.2d 1434 (10th Cir.1986). *See also, California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987); *State v. Hoodie,* 588 F.2d 292 (9th Cir.1978); *Arquette v. Schneckloth,* 56 Wash.2d 178, 351 P.2d 921 (1960).

Pub.L. 83–280 further allowed unnamed states to assume criminal jurisdiction over Indian lands within their borders if they met certain requirements and obtained the consent of the tribe over which they desired jurisdiction. Pub.L. 90–284, Title IV, § 401, Apr. 11, 1968, 82 Stat. 78; *Langley*

*v. Ryder,* 733 F.2d at 1096. Section 6 of the Act of Aug. 15, 1953, c. 505, 67 Stat. 590 [Pub.L. 83–280], provided that:

[n]otwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act [adding section 1360 of this title and section 1162 of Title 18]: Provided, That the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be.

In Section 7, Congress gave consent to any other state not having criminal and/or civil jurisdiction to assume jurisdiction at the time and in the manner the people of that state, by legislative action, obligate and bind the state to do so.[2]

Section 20 of Arizona's Enabling Act, Act June 20, 1910, c. 310, 36 Stat. 557, 568–579, provides in pertinent part:

[t]hat the people inhabiting said proposed State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof and to all lands lying within said boundaries owned or held by an Indian or Indian tribes, the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that until the title of such Indian or Indian tribes shall have been extinguished the same shall be and remain subject to the disposition and under the

---

2. That part of Pub.L. 83–280 which permitted assumption of civil and/or criminal jurisdiction by states not having such was repealed by Pub. L. 90–284, Title IV, § 403(b), Apr. 11, 1968, 82 Stat. 79. This repeal was not to affect any cession of jurisdiction made pursuant to 18 U.S.C. § 1162 (criminal jurisdiction) or 28 U.S.C. § 1360 (civil jurisdiction) prior to repeal. However, the repeal did close the door on any subsequent cession of civil or criminal jurisdiction to the states under either statute. *See also, Langley v. Ryder,* 602 F.Supp. 335, 344 (W.D.La.), *aff'd,* 778 F.2d 1092 (5th Cir.1985).

absolute jurisdiction and control of the Congress of the United States; ...

Ariz. Const. art. 20, para. 4, adopts virtually identical language.[3]

Under A.R.S. § 36–1801, Arizona has assumed jurisdiction over Indian lands pursuant to Pub.L. 83–280 for the limited purpose of enforcing air pollution control laws.[4] However, Congress has not made an express grant of state criminal jurisdiction over the Navajo reservation,[5] nor has the state assumed such jurisdiction in accordance with Pub.L. 83–280. Moreover, the time for the state to assume either civil or criminal jurisdiction has passed.[6] Consequently, it would be inappropriate for this court to redefine Arizona's criminal jurisdiction when such jurisdiction is obviously a matter of federal legislative concern.

The United States Supreme Court held that 18 U.S.C. § 1153, which allocates jurisdiction between the federal and tribal courts in cases of crimes between Indians on Indian land, does not allow for concurrent state jurisdiction in such cases. *United States v. John*, 437 U.S. 634, 98 S.Ct. 2541, 57 L.Ed.2d 489 (1978). If concurrent state jurisdiction does not exist under 18 U.S.C. § 1153, it seems likely that a similar result should obtain under 18 U.S.C. § 1152.

*State v. Burrola*, 137 Ariz. 181, 669 P.2d 614 (App.1983), can be distinguished and is of no aid to the state. In *Burrola*, this court found that the state had jurisdiction where a non-Indian committed a victimless crime on the Indian reservation. The court first noted the long-established exception to exclusive federal jurisdiction which provides for exclusive state jurisdiction over crimes committed by non-Indians against non-Indians, even though on the reservation. *McBratney*, 104 U.S. (14 Otto) 621; *State v. Griswold*, 101 Ariz. 577, 578, 422 P.2d 693, 694 (1967). The rationale for this exception is that such crimes do not involve essential tribal relations or affect the rights of Indians. *Burrola*, 137 Ariz. at 182, 669 P.2d at 615. This court found the same reasoning applicable where a non-Indian commits a victimless crime on an Indian reservation.

By contrast, in a situation such as this, both the Indian tribe and the federal government, which acts as the Indians' guardian, have a very strong interest. The appellee here is charged with serious sexual crimes against several young Indian males, thus creating a strong tribal interest. In this respect, this case is similar to *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962, where the non-Indian defendant was charged with having sexual contact with an underage Indian female. Further, in *Williams*, the court noted that federal jurisdiction was especially applicable "with respect to crimes committed by white men against the persons or property of Indian tribes while occupying reservations...." 327 U.S. at 714, 66 S.Ct. at 780, *citing Donnelly*, 228 U.S. 243, 33 S.Ct. 449.

**3.** Article I of the treaty between the United States Government and the Navajo Indian Tribe also provides:

If bad men among the whites, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington City, proceed at once to cause the offender to be arrested and punished according to the laws of the United States, and also to reimburse the injured persons for the loss sustained.

Treaty of 1868, August 12, 1868, art. I, 15 Stat. 667; Navajo Trib.Code, App., at 9 (1978). *Cf. United States v. Superior Court In & For Maricopa County*, 144 Ariz. 265, 697 P.2d 658 (1985).

**4.** Section 36–1801 was renumbered as A.R.S. § 49–561 by Laws 1986, ch. 368, § 39, effective July 1, 1987.

**5.** Congress has expressly given Arizona criminal and civil jurisdiction over the Pascua Yaqui Indian reservation. 25 U.S.C. § 1300f(c). However, it is not clear whether such delegation is still effective in the face of the Arizona Governor's attempted retrocession of jurisdiction and Ariz. Const. art. 20, para. 4, which disclaims any jurisdiction over Indians or their land. *See Val/Del, Inc. v. Superior Court*, 145 Ariz. 558, 564 n. 2, 703 P.2d 502, 508 n. 2 (App.1985).

**6.** *See* note 2, *supra*.

We conclude the state has no jurisdiction in this case. The trial court's order dismissing the state's prosecution is affirmed.

CONTRERAS, P.J., and FIDEL, J., concur.