841 P.2d 231

**STATE of Arizona, Appellee,**

v.

**Mark Chester MOORE, Appellant.**

**No. 1 CA–CR 91–150.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 17, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Phoenix, for appellee.

Garth Nelson, Yuma, for appellant.

## OPINION

TOCI, Judge.

This is an appeal from the sentence imposed on a judgment of conviction that Mark Chester Moore ("defendant") commit-

ted theft from a convenience market on the Cocopah Indian Reservation. The issue is whether a non-Indian defendant who steals from a reservation convenience store, owned and operated by a joint venture between an Indian tribe and a foreign corporation authorized to do business in Arizona, is subject to State of Arizona jurisdiction. We conclude that because the crime did not significantly involve the interests of the Indian tribe, Arizona has jurisdiction.

## FACTS AND PROCEDURAL HISTORY

A Yuma County grand jury indicted the defendant on four counts of theft and one count of armed robbery. The defendant, an employee of the Cocopah Easy Corner convenience market ("market"), located on the Cocopah Indian reservation, stole cash receipts from the market on three occasions. He was charged with three counts of theft, all class 3 felonies. The defendant later returned to the market and, armed with a knife, robbed the clerk of $400.00. He was charged with one count of robbery, a class 2 felony, and one other count of theft, a class 6 felony.

Easy Corner Inc. ("Easy Corner"), a Colorado corporation authorized to do business in Arizona, operates the convenience market under a joint venture agreement and a federally-approved tribal lease. According to the terms of the agreement, Easy Corner contributed the financing and construction of the market to the joint venture. The tribe's only contribution to the joint venture was the grant of the right to conduct a convenience market on the reservation under the lease between the tribe and Easy Corner. Paragraph 4.06 of the agreement, however, provides that at the end of the ten-year term, the joint venture terminates and ownership of the building, improvements, and trade fixtures passes from Easy Corner to the tribe.

Paragraph 4.01 of the agreement provides that Easy Corner has the sole power and authority to operate and manage the market. Accordingly, the agreement entitles Easy Corner to the lion's share of the net profits. In contrast, the tribe has no management authority and receives a small percentage of the net profits on convenience store sales.[1]

Presumably due to a mistaken belief that the joint venture was a tribal enterprise, the grand jury originally listed the Cocopah Indian Tribe as one of the victims in all five counts of the indictment. The defendant moved to dismiss, arguing that the Yuma County Superior Court had no jurisdiction because the acts occurred on the Cocopah Indian reservation and involved funds or property in which the tribe had a "direct business and financial interest." The trial court agreed and struck the tribe from the indictment. Nevertheless, the trial court concluded it had jurisdiction over the non-Indian defendant and the remaining victims, Easy Corner, and the non-Indian clerk.

Later, the defendant entered an *Alford*[2] plea to one count of theft, a class 3 felony, with one prior felony conviction. In return, the state agreed to drop the remaining charges and limit restitution to $13,000.00. The basis for the count to which the defendant pled was the theft of one day's receipts of $3,876.33 in cash and $1,048.00 in checks from the convenience market. The trial court accepted the defendant's plea and sentenced him to an aggravated term of ten years in prison with credit for 311 days of presentence incarceration. The court also ordered defendant to pay restitution in the amount of $12,673.80. The defendant timely appealed.

1. According to Paragraph 2.03 of the joint venture agreement, the tribe is entitled to 5% of the net profits from the convenience store and smokeshop, excluding any of the proceeds derived from gasoline or diesel fuel sales. The tribe's interest in the net profits increases by 2% per year during the remaining term of the agreement. The agreement was signed by the tribe and approved by the federal government on October 10, 1986. In January 1990, when the crime was committed, the tribe's interest in the net profits from the convenience store and smokeshop was 11%. In addition, the tribe was entitled to 10% of the difference between the gross sales of automotive fuel and the cost of such sales.

2. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

## DISCUSSION

■ We hold that Arizona has jurisdiction over the defendant for the crime he committed against the joint venture on the Indian reservation. We find that because the joint venture agreement does not give the tribe a substantial interest in the joint venture, the crime did not significantly involve the interests of the tribe. Further, we conclude that vesting Arizona with jurisdiction will not infringe upon tribal interests or the federal government's ability to protect the tribe's interests.

■ Jurisdiction in Indian country "is governed by a complex patchwork of federal, state, and tribal law." *Duro v. Reina*, 495 U.S. 676, 680 n. 1, 110 S.Ct. 2053, 2057 n. 1, 109 L.Ed.2d 693 (1990). Indian country includes "all land within the limits of any Indian reservation under the jurisdiction of the United States government." 18 U.S.C. § 1151(a). The Indian Country Crimes Act, 18 U.S.C. § 1152, "applies the general laws of the United States to crimes committed in Indian country." *Duro*, 495 U.S. at 680 n. 1, 110 S.Ct. at 2057 n. 1.[3] Under this act, federal courts have jurisdiction over non-Indians who commit crimes against Indians on Indian reservations. *See Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251 (1959); *Williams v. United States*, 327 U.S. 711, 714, 66 S.Ct. 778, 780, 90 L.Ed. 962 (1946); *Donnelly v. United States*, 228 U.S. 243, 269–72, 33 S.Ct. 449, 458–59, 57 L.Ed. 820 (1912); *see also* Felix S. Cohen, *Handbook of Federal Indian Law*, at 298 (1982 ed.). This court has held that federal jurisdiction is exclusive when a non-Indian commits a crime against an Indian in Indian country. *State v. Flint*, 157 Ariz. 227, 229, 756 P.2d 324, 326 (App.1988), *cert. denied*, 492 U.S. 911, 109 S.Ct. 3228, 106 L.Ed.2d 577 (1989).

■ The Supreme Court, however, has created a judicial exception to the Indian Country Crimes Act, *Duro*, 495 U.S. at 680 n. 1, 110 S.Ct. at 2057 n. 1, by holding that states have exclusive jurisdiction over non-Indians who commit offenses against non-Indians on Indian reservations. *United States v. McBratney*, 104 U.S. 621, 26 L.Ed. 869 (1882) (Colorado had exclusive jurisdiction over a white defendant who murdered a white victim on an Indian reservation); *Draper v. United States*, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419 (1896) (Montana had exclusive jurisdiction over a black defendant who murdered a black victim on an Indian reservation); *New York ex rel. Ray v. Martin*, 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261 (1946) (State of New York had exclusive jurisdiction over a non-Indian defendant who murdered a non-Indian victim on an Indian reservation); *see also* Cohen at 298.

Although the State of Arizona follows the *McBratney–Draper–Martin* holdings, *State v. Attebery*, 110 Ariz. 354, 519 P.2d 53 (1974); *State v. Griswold*, 101 Ariz. 577, 422 P.2d 693, *cert. denied*, 388 U.S. 913, 87 S.Ct. 2113, 18 L.Ed.2d 1352 (1967), *State v. Burrola*, 137 Ariz. 181, 669 P.2d 614 (App. 1983), they are not directly on point with this case. Here, the defendant is a non-Indian, but the offense to which he pled was not one against a non-Indian. Instead, the offense was one against a joint venture in which a non-Indian corporation and an Indian tribe both have an interest. While other courts have decided similar questions, we find no cases that resolve this specific issue. *See Eastern Navajo Indus., Inc. v. Bureau of Revenue*, 89 N.M. 369, 552 P.2d 805 (App.1976), *cert. denied*, 430 U.S. 959, 97 S.Ct. 1610, 51 L.Ed.2d 810 (1977) (court denied state jurisdiction to tax gross receipts of corporation composed of 51% Indian shareholders); *Airvator, Inc. v. Turtle Mountain Mfg. Co.*, 329 N.W.2d 596 (N.D.1983) (held state courts have jurisdiction over corporation with 51% Indian stockholders because it was incorporated under state law).

---

**3.** Section 1152 states in part: "Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to Indian Country." The Major Crimes Act, 18 U.S.C. § 1153, only governs Indians who commit major crimes in Indian country; thus, it does not apply here.

■ Commentators have recognized the jurisdictional problem posed by the *McBratney–Draper–Martin* holdings when there are both Indians and non-Indians involved as defendants or victims. *See* Robert N. Clinton, *Criminal Jurisdiction Over Indian Land: A Journey Through a Jurisdictional Maze*, 18 Ariz.L.Rev. 503, 527–29 (1976); Cohen at 353–56. In such cases, Clinton suggests that when applying the *McBratney–Draper–Martin* holdings, a court "should pierce the indictment to ascertain whether on the facts of the situation, taken as a whole, an Indian was involved in the criminal incident in some significant way, either as perpetrator or a victim." *See* Clinton at 528–29. Although here we are dealing with Indian and non-Indian participants in a business relationship, and not multiple criminal defendants or victims, some of whom are Indian and some of whom are not, we conclude that Clinton's analysis is sound. In the absence of precedent, we adopt it in this case.

■ In determining whether the defendant's crime significantly involved the tribe, we must analyze the nature of the relationship between Easy Corner and the Cocopah tribe. Although the joint venture agreement is not entirely clear, it provides that the laws of Arizona govern the interpretation of the agreement.[4] Under Arizona law, a joint venture is a form of partnership, *Waterman v. Rabinovitz*, 161 Ariz. 511, 514, 779 P.2d 826, 829 (App. 1989), and "a partner's interest in the partnership is his share of the profits and surplus." A.R.S. § 29–226; *see also* Scott Rowley, 1 *Rowley on Partnership: The Substantive Law*, § 26.1 at 569 (2nd ed. 1960) (citing Uniform Partnership Act § 26); Scott Rowley, 2 *Rowley on Partnership: Collateral Matters*, §§ 52.32 to 52.34 at 504–507 (2nd ed. 1960) (each venturer's interest in the joint venture enterprise is equal unless the agreement expressly states otherwise). We conclude that the language of the joint venture agreement determines the tribe's interest.

Here, according to the terms of the agreement, the tribe does not have a significant interest in the joint venture. At the time of the theft, the agreement entitled Easy Corner to most of the net profits from the joint venture. Furthermore, Easy Corner clearly controls the business; the tribe has no managerial authority or power over the joint venture. Although the tribe will own the building, improvements, and trade fixtures when the joint venture ends, the tribe has no present ownership interest in any of the property held by the joint venture. Finally, Paragraph 4.02(B) of the agreement provides Easy Corner has exclusive "[c]ontrol and [may] otherwise exercise plenary authority over the use and disposition of the [leased] lands," subject only to "the laws of the United States."

■ We recognize that the Supreme Court has stated that *McBratney* does not extend "to crimes committed by [non-Indians] against persons or *property* of the Indian tribes." *Donnelly*, 228 U.S. at 272, 33 S.Ct. at 459 (emphasis supplied). We interpret this language to mean that states do not have jurisdiction over a non-Indian defendant who steals property owned solely by an Indian or an Indian tribe. Here, however, a non-Indian defendant stole money not from an Indian tribe but from a joint venture in which an Indian tribe has a minor interest in the net profits and no present ownership in any of the assets. Furthermore, because the tribe will receive its share of the net profits only if the gross receipts exceed expenses, its stake in the stolen receipts is conjectural. Thus, in our opinion, *Donnelly* does not prevent us from exercising jurisdiction in this case.

We conclude that because the joint venture agreement does not give the tribe a significant interest in the joint venture, the defendant's crime did not significantly affect the tribe. *See* Clinton at 528–29.

---

**4.** Paragraph 6.01 provides as follows:

*Law Applicable.* It is understood that the Cocopah Tribe has general governmental authority on the Cocopah Reservation and that in addition the laws of the United States are also applicable. To the extent that a rule of decision is necessary to interpret this agreement, the laws of the State of Arizona shall be applied for that purpose only.

Therefore, under the principle announced in *McBratney, Draper,* and *Martin,* Arizona has jurisdiction over the defendant.

We do not decide whether Arizona's jurisdiction is exclusive or merely concurrent with that of the federal government. If Arizona has exclusive jurisdiction, failing to exercise such jurisdiction over this non-Indian defendant will permit defendant to escape prosecution for his crime. A similar result may occur if Arizona and the federal government have concurrent jurisdiction because Indian tribes have no jurisdiction to prosecute non-Indians for crimes committed on the reservation, *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), and a state cannot force the federal government to prosecute such crimes.

In any event, we conclude that following the *McBratney–Draper–Martin* principle is proper here because it does not infringe upon tribal or federal sovereignty, and it promotes the public policy of Arizona. When determining whether a state may properly assert its authority over conduct on Indian reservations, the Supreme Court requires "inquiry into the nature of the state, federal, and tribal interests at stake ... to determine whether, in the specific context, the exercise of state authority would violate federal law." *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 145, 100 S.Ct. 2578, 2584, 65 L.Ed.2d 665 (1980). *See also State ex rel. Dept. of Revenue v. Dillon,* 170 Ariz. 560, 566, 826 P.2d 1186, 1192 (1991) (citing *New Mexico v. Mescalero Apache Tribe,* 462 U.S. 324, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) ("State jurisdiction over activities on Indian reservations is preempted by federal law only if it interferes or is incompatible with federal and tribal interests reflected in federal law."). We have applied this same balancing test in other Arizona cases involving non-Indian defendants who commit crimes on Indian reservations. *See Flint,* 157 Ariz. at 231, 756 P.2d at 328 (Arizona does not have jurisdiction where crime involved sexual molestation of an Indian youth on reservation because the Indian tribe and federal government had a very strong interest in protecting the Indian youth); *Burrola,* 137 Ariz. at 182, 669 P.2d at 615 (Arizona has jurisdiction over a weapons violation committed on a reservation by a non-Indian because there is no infringement on tribal sovereignty and because the state had significant interest in enforcing its law).

In weighing these interests, we find that the exercise of Arizona jurisdiction over the defendant will not violate the principles enunciated in *Bracker.* If the federal government has concurrent jurisdiction, our exercise of jurisdiction will not preclude the federal government from prosecuting. The dual sovereignty doctrine allows the federal government to prosecute a defendant following a state prosecution for the same crime. *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). Thus, permitting Arizona to enforce its criminal laws against defendant in state court will not prevent the federal government from protecting any interests the tribe may have by a later prosecution in federal court.

■ Second, and more importantly, subjecting a non-Indian defendant to prosecution in state court for a crime against what is essentially a non-Indian joint venture neither infringes on tribal sovereignty nor is it preempted by the federal government's comprehensive scheme of tribal regulation. The tribe itself, through the lease and joint venture agreement, has given extensive power to Easy Corner, a non-Indian entity, to operate the business and to control the premises. Additionally, although the agreement recognizes the governmental authority of the tribe, the tribe has specified that the laws of Arizona—not tribal laws—apply to the interpretation of the agreement. Furthermore, the federal government, exercising its power under 25 U.S.C. § 415 to approve or withhold approval of the terms of the lease, has consented to the lease and business relationship between the tribe and Easy Corner. Thus, in these circumstances, we find no conflict with the tribe's sovereignty and nothing in the federal Indian regulatory scheme that preempts Arizona jurisdiction.

On the other hand, the state has a public policy interest in enforcing its criminal laws. "It is the public policy of [Arizona], as reflected by the criminal code, to condemn, correct, or deter transgressions which harm either individual or public interests." *State v. Bly*, 127 Ariz. 370, 371, 621 P.2d 279, 280 (1980); *see also* Ariz.Rev. Stat.Ann. § 13–101. Denying Arizona jurisdiction over the defendant will substantially stifle that interest. Here, the state is carrying out the public policy of Arizona by prosecuting the defendant for employee theft. Arizona has the right to protect what are essentially non-Indian businesses operating on the reservation from non-Indian criminals.

For these reasons, we affirm the trial court's ruling.

GRANT, P.J., and LANKFORD, J., concur.