No. 89-280

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Appellant,

    -vs-

HERB SCHAEFFER,

        Defendant and Respondent.

FILED

'89 OCT 19 AM 9 54

ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM:  The District Court of the Ninth Judicial District,
In and for the County of Glacier,
The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        James C. Nelson, County Attorney, Cut Bank, Montana

    For Respondent:

        David F. Stufft; Frisbee, Moore, Stufft & Olson,
        Cut Bank, Montana

Submitted on Briefs:  July 20, 1989

Decided:  October 19, 1989

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Ninth Judicial District, Glacier County, Montana, wherein the District Court granted the defendant's motion to dismiss based on lack of jurisdiction because the matter occurred within the exterior boundaries of the Blackfeet Indian Reservation. We reverse.

Defendant/respondent Herb Schaefer, a non-Indian, was charged in the Glacier County Justice Court on March 16, 1988, with violations of Montana pawnbroker laws, including the charging of excessive interest rates as a pawnbroker in violation of §§ 31-1-401 and 31-1-407, MCA; and in failing to keep a pawnbroker's register in violation of §§ 31-1-402 and 31-1-407, MCA.

The three misdemeanor offenses filed against Schaefer in justice court included these two offenses:

COUNT ONE

[T]he above named Defendant committed the offense of CHARGING [Garnet Bear Child] EXCESSIVE INTEREST AS A PAWNBROKER, a MISDEMEANOR, in violation of Section 31-1-401 & 31-1-407 MCA.

. . .

COUNT TWO

[T]he above named Defendant committed the offense of CHARGING [Margaret Wippert] EXCESSIVE INTEREST AS A PAWNBROKER, a MISDEMEANOR in violation of Sections 31-1-401 & 31-1-407 MCA.

. . .

It is of interest to note that the officer who brought these charges in the justice court is an enrolled member of

2

the Blackfeet Indian Tribe, employed by the Bureau of Indian Affairs and was not employed by any State agency or the Glacier County Sheriff's Department. During the investigation by this officer, there was, at that time, no ordinance under which charges could be brought against Schaefer in the Blackfeet Tribal Court. Consequently, charges were sought in justice court.

Schaefer moved to dismiss the complaint in the justice court on the ground that the State did not have jurisdiction to criminally prosecute him since the alleged offenses occurred within the exterior boundaries of the Blackfeet Indian Reservation and because the persons involved in the transactions with which he was charged were Indians. The justice court rejected Schaefer's motion to dismiss and, after a bench trial, Schaefer was found guilty of Counts I and II, charging excessive interest rates, misdemeanors, and not guilty of failing to keep a pawnbroker's register. Schaefer was imposed with a $100 fine each on Counts I and II.

Schaefer appealed to the District Court and renewed his jurisdictional objection by filing on March 9, 1989, a motion to dismiss. After the filing of briefs and oral argument the District Court, on April 11, 1989, granted defendant's motion to dismiss on the ground that the State lacked jurisdiction.

The State now appeals the District Court's order granting defendant's motion to dismiss and raises the following issue on appeal: Does the State of Montana have jurisdiction to criminally prosecute a non-Indian defendant for violation of the Montana pawnbroker statutes where the alleged offenses occur within the exterior boundaries of an Indian reservation and involve transactions with Indians?

Garnet Bear Child and Margaret Wippert are enrolled members of the Blackfeet Tribe who live and reside on the

3

Blackfeet Indian Reservation. Schaefer, as previously noted, is a non-Indian and his place of business is located within the exterior boundaries of the Blackfeet Indian Reservation in Browning, Montana.

Concerning the loans which were the basis of Schaefer's charges, the State contends Schaefer's conduct, charging Bear Child and Wippert an interest rate of 1228% and 869% per annum, is neither a "small matter" nor "merely an overcharge." Additionally, the State claims that the federal government, whether or not it has jurisdiction, has neither the time, money, nor staff to supervise, regulate and control reservation pawnshops.

Schaefer argues that by virtue of Blackfeet Tribal Resolution No. 5-89, he is authorized and regulated by the Tribe to do business as a pawnbroker. However, Resolution No. 5-89 was procured from the Tribal Council by Schaefer and his attorneys in preparation for the trial in justice court. The Resolution was adopted by the Blackfeet Tribal Business Council on October 6, 1988, some nine months after Schaefer's commission of the offenses and two working days before Schaefer's case was scheduled for trial.

The District Court, in granting Schaefer's motion to dismiss, held that State v. Greenwalt (1983), 204 Mont. 196, 663 P.2d 1178, is controlling. We do not agree. In Greenwalt, the District Court held that the State lacked jurisdiction to prosecute the defendants for crimes committed against Tribal members on an Indian reservation. Neither Tribal law nor Federal law had provided against such misdemeanor offenses. In the case at bar, unless the State had brought these charges against Schaefer, Bear Child and Wippert, Indian citizens of Montana, would be without the State's protection for offenses committed on an Indian reservation by a non-Indian.

4

In two recent cases, State v. Thomas (Mont. 1988), 760 P.2d 96, 45 St.Rep. 1627; and Brown v. District Court of the Seventeenth Judicial District (Mont. 1989), 777 P.2d 877, 46 St.Rep. 1242, this Court assured the Indian citizens of this State the protection of its laws where neither the Tribal Court nor the Federal government provided such protection. While Brown involved the regulation of the sale of liquor and the licensing of the same on an Indian reservation by Indians, this Court held that the State did have the power to prosecute, in State court, violations of State liquor laws which occur within the borders of an Indian reservation by Indian people.

In Thomas, this Court held that our State courts have jurisdiction over non-Indians charged with violations of the accident reporting law, § 61-7-108, MCA. There, the defendant, a non-Indian, was charged with violating this provision after his vehicle struck a calf owned by an Indian family. We held that even though the accident occurred on a reservation, and the property damaged belonged to an Indian family, the State nonetheless had jurisdiction to prosecute the defendant under the State statute. In Thomas, it was irrelevant to our conclusion that the calf was owned by an Indian family. It is equally irrelevant to the conclusion we reach here that the victims of Schaefer's violations were members of the Blackfeet Tribe.

Two elements are to be considered here, those elements expressed in this Court's recent opinion in Thomas on "victimless crimes," and the rights of Indian citizens of this State to be protected by our laws. Bonnet v. Seekins (1952), 126 Mont. 24, 243 P.2d 317; and State ex rel. Kennerly v. District Court (1970), 154 Mont. 488, 466 P.2d 85. Here, as in Thomas, Schaefer failed to discharge a reporting duty. In Thomas the defendant failed to report a

5

traffic accident. In the case at bar Schaefer failed to obtain a county pawnbroker license. While so doing Schaefer created victims by charging outrageously high interest rates, as well as violating the laws of this State.

This Court, in State ex rel. Kennerly, 154 Mont. at 493, 466 P.2d at 88, noted:

> The jurisdiction problem arising from civil and criminal legal relationships between Indians and non-Indians has been before the courts of this state since statehood. With some 25,000 Indian citizens living on or near one of some seven reservations in the state, it is understandable that the problem is not new however, because of the duality of the Indian's legal status each case must be considered in light of both state and federal relationships.

> Indians resident in Montana, whether they be full blood or partial blood, allotted or unallotted, domiciled on the reservation or off of it, of one tribe or another, or whatever their status, are citizens of the State of Montana. They are entitled to the protection of our laws and are responsible to our laws. . .

Montana's constitution provides to all citizens, Indian and non-Indian alike, equal protection of its laws. The Indian citizens of this State are entitled to the protection of the laws which license and regulate pawnbrokers. Montana has a substantial and important interest in protecting all of its citizens from dishonest pawnbrokers. This purpose is effectuated by requiring accurate and detailed records of transactions in the event authorities need to trace stolen merchandise. The records of transactions also prevent the charging of excessive rates of interest. Regardless of where the pawnshop is located, whether on or off the reservation,

6

the business is open to the entire public. The State has a substantial interest in protecting all citizens against such violations.

The decision of the District Court is reversed and remanded.

_John Conway Harrison_
Justice

We concur:

_P. A. Turnage_
Chief Justice

_John C. Sheehy_

_L. C. Gulbrandson,_

_R. C. McDonough_

Jutices

7

Justice Fred J. Weber dissents as follows:

The State of Montana does not have jurisdiction over a criminal offense by a non-Indian against an Indian, committed within the exterior boundaries of the reservation. This was the holding in Greenwalt, wherein this Court affirmed the District Court's dismissal of criminal charges against a non-Indian based on lack of State jurisdiction. In Greenwalt, two non-Indians stole five calves on an Indian reservation. One of these calves belonged to an Indian. The charges against the Greenwalts, relating to the theft of this calf were dismissed on the grounds that the State lacked authority to prosecute. In Greenwalt we affirmed the dismissal, holding that the State did not have jurisdiction.

In Greenwalt, this Court stated:

> In Williams v. United States (1946), 327 U.S. 711, 714, 66 S.Ct. 778, 780, 90 L.Ed. 962, 964, the United States Supreme Court stated:
>
> > "While the laws and courts of the State of Arizona may have jurisdiction over offenses committed on this reservation between persons who are not Indians, the laws and courts of the United States, rather than those of Arizona, have jurisdiction over offenses committed there, as in this case, by one who is not an Indian against one who is an Indian."
>
> The 1982 edition of Felix S. Cohen's Handbook of Federal Indian Law, states at page 353, relying upon Williams:
>
> > "Criminal offenses by non-Indians against Indians or their property are subject to the Indian Country Crimes Act [18 U.S.C. § 13]. The Supreme Court has stated that federal court jurisdiction under this Act is exclusive of state court jurisdiction."

8

> See, American Indian Lawyer Training Program, Inc.,
> Justice in Indian Country (1980) 32, and Manual of
> Indian Criminal Jurisdiction (1978 Supp.) 73a;
> Getches, Rosenfelt and Wilkinson, Federal Indian
> Law (1979), 388 ("c. Crimes by a Non-Indian Against
> an Indian: State courts cannot have
> jurisdiction.")

Greenwalt, 663 P.2d at 1182-83.

In Greenwalt the remaining charges were later dismissed for insufficient evidence. However, that is irrelevant to the issue of jurisdiction in the present case because those charges did not involve a crime against an Indian. I conclude that the facts of Greenwalt are not distinguishable and the holding should control the present case. We further note that the majority can find no comfort in the language quoted from State ex rel. Kennerly, since that case involved a civil dispute.

Concurrent State and federal jurisdiction may lie where the crime is "victimless." See, Cohen, Felix S., Handbook of Federal Indian Law, 353, n.4 (1982); State v. Flint (Ariz.App. 1988), 756 P.2d 324. The majority opinion analogizes to Thomas in concluding that the present case involves a victimless crime. In Thomas we determined that the crime was "the failure to discharge a reporting duty, not infliction of damage upon property belonging to an Indian." We concluded that the crime was therefore victimless for purposes of determining jurisdiction. In the present case, I fail to see how charging interest of 869% to 1228% is a victimless crime. Examples of victimless crimes include possession of illegal drugs, pornography, violation of motorcycle helmet laws, gambling or tax evasion. The Indians doing business at Mr. Schaefer's pawn shop, who were being charged interest in excess of 800%, certainly must be classed as victims.

9

The opinion states that the Indian citizens of our State are entitled to the protection of laws regulating pawnbrokers, yet concludes that the crime is victimless. This is inconsistent. While I understand the desire of this Court to provide a means by which this defendant may be punished, I simply cannot agree that this is a victimless crime or that the State has jurisdiction. Our desire to see justice done stems from the fact that there are victims in the present case. I would affirm the District Court.

Justice

Justice William E. Hunt, Sr., concurs in the foregoing dissent.

Justice

10