No. 93-408

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

      Plaintiff and Respondent,

-v-

THOMAS HASKINS,

      Defendant and Appellant.

FILED

DEC 21 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

         William F. Hooks, State Appellate Defender, Helena,
Montana

      For Respondent:

         Hon. Joseph P. Mazurek, Attorney General, John
Paulson, Assistant Attorney General, Helena,
Montana; Larry J. Nistler, Lake County Attorney,
Polson, Montana

Submitted on Briefs:  September 1, 1994

Decided:  December 21, 1994

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court

Appellant Thomas Haskins (Haskins) appeals from his November 27, 1989 conviction by a Twentieth Judicial District Court, Lake County jury of four counts of criminal sale of dangerous drugs. We affirm.

## BACKGROUND

The factual background and a portion of the procedural background of this case is set forth in State v. Haskins (1992), 255 Mont. 202, 841 P.2d 542, (Haskins I) and will not be repeated in any detail here except as necessary to address the issues raised. Suffice it to say that Haskins is a non-Indian; that the State criminal offenses of which he was convicted were committed entirely within the exterior boundaries of the Flathead Indian Reservation in Lake County, Montana; that he was arrested for those offenses by law enforcement authorities of the State of Montana; that he was prosecuted and sentenced for those offenses by the State of Montana in district court in Lake County; that the evidence utilized by the State in Haskins' conviction was obtained as a result of an undercover investigation and controlled drug buys conducted by police officers employed by the Confederated Salish and Kootenai Tribes for the Flathead Tribal Police Department, the evidence being then turned over to the State authorities by those officers; and that two of the State's witnesses were Indian tribal police officers.

Haskins' raised thirteen issues in his first appeal. We determined that only eight of those issues had been properly

2

preserved for appeal, and as to those issues, we affirmed. Haskins I, 841 P.2d 545, 548. On August 18, 1993, Haskins filed a petition for postconviction relief in this Court alleging ineffective assistance of counsel, based on his counsel's failure to preserve the five defaulted issues for appeal. In January 1994, we issued an order permitting Haskins to go forward with the appeal on those five issues and authorized the filing of supplemental briefs. Subsequently, we also granted leave to the Confederated Salish and Kootenai Tribes to appear amicus curiae.

The five remaining issues which we consider on this appeal are:

1. Whether the District Court abused its discretion in not allowing Haskins to call Martin Cramer as an expert witness?

2. Whether undercover officer Robert Nelson was competent to testify?

3. Whether Haskins' conviction should be reversed because it was based solely upon the testimony of an undercover officer who was accountable for the same conduct for which Haskins was convicted?

4. Whether the Confederated Salish and Kootenai Tribes exceeded its jurisdiction in the investigation of Haskins by using undercover officer Nelson?

5. Whether cumulative error warrants a new trial?

DISCUSSION

1. Whether the District Court abused its discretion in not allowing Haskins to call Martin Cramer as an expert witness?

On the opening day of trial, the prosecution filed a motion in limine to prohibit Haskins from calling Martin Cramer (Cramer) as an expert witness. Cramer, a private investigator, had, pursuant

3

to a court order, investigated undercover officer Nelson in another case. Following argument, the District Court granted the State's motion in limine in part and precluded Haskins from calling Cramer to offer expert opinion testimony on whether Nelson's conduct deviated from what Cramer considered to be proper training or instructions for an undercover drug operation. Haskins was, however, allowed to call Cramer to testify about his (Cramer's) own background and training as to proper procedure. The defendant did not call Cramer as a witness and did not raise the District Court's order in his motions for new trial.

The State's motion in limine was premised on its allegation that the prosecutor had first received notice of Haskins' intent to call Cramer on the day of trial and on its contention that the defendant had not complied with the court's pretrial order granting the State's discovery motion under § 46-15-323, MCA.

Under § 46-15-323(4)(b), MCA (1987), the defendant was required to provide the prosecution written notice of certain defenses within 30 days after arraignment and, simultaneously, to make available to the State the names and addresses of experts whom he intended to call at trial together with, among other things, copies of reports and statements generated by those experts in connection with the case. The prosecutor argued that the late notice of Haskins' intention to call Cramer and the failure to provide any written report or resume from Cramer, precluded the State from effectively meeting the proposed expert testimony.

The District Court apparently agreed with the State and, in

4

prohibiting Cramer from offering opinion evidence as an expert, it imposed one of the sanctions authorized under § 46-15-329(4), MCA (1989), that is, "precluding a party from calling a witness, offering evidence, or raising a defense not disclosed."

We hold that the District Court did not err in granting the State's motion in limine in part. In the first place, it is well established that whether a witness is an expert and whether his or her testimony is admissible is largely within the discretion of the trial court and that we will not overturn the trial court's decision on such matters absent an abuse of discretion. State v. Baker (1991), 249 Mont. 156, 160, 815 P.2d 587, 589. Moreover, in State v. Clark (1984), 209 Mont. 473, 682 P.2d 1339, we determined that, under Rule 702, M.R.Evid., a private investigator could not testify as an expert as to the results of his investigation as such testimony would not involve "scientific, technical or other specialized knowledge." Clark, 682 P.2d at 1345. Accordingly, the District Court was well within its discretion to preclude Cramer from offering expert opinion testimony on the results of his investigation of officer Nelson.

Secondly, we conclude that the court properly sanctioned Haskins for failing to comply with the discovery order and the disclosure requirements of § 46-15-323(4)(b), MCA (1987). In State v. Waters (1987), 228 Mont. 490, 743 P.2d 617, we observed that, consistent with the discovery goals of enhancing the search for truth, § 46-15-329, MCA, endows a district court with the discretion and flexibility to impose sanctions commensurate with

5

the failure to comply with discovery orders and that, absent a clear abuse of discretion, we will not interfere with the trial court's decision. Waters, 743 P.2d at 621. See, also, State v. Van Voast (1991), 247 Mont. 194, 202, 805 P.2d 1380, 1385; and State v. Kaczmarek (1990), 243 Mont. 456, 462, 795 P.2d 439, 443.

Under the circumstances, where Haskins failed to comply with the disclosure requirements of the court's discovery order and § 46-15-323(4)(b), MCA (1987), and where the offered expert opinion testimony was not within the requirements of Rule 702, M.R.Evid., we hold that the District Court did not abuse its discretion in granting the State's motion in limine in part, and in sanctioning Haskins by prohibiting Cramer from offering expert opinion testimony on the results of his investigation of undercover officer Nelson.

2. Whether undercover officer Nelson was competent to testify?

Haskins contends that undercover officer Nelson was not competent to testify as a witness and that the trial court should have so ruled as a matter of law. According to Haskins, "Nelson's inability to tell the truth even though he was under oath is clear evidence of his inability to understand the duty of a witness to tell the truth." In support of his position Haskins cites changes in Nelson's testimony, the witness' apparent disregard of the law, Rule 601, M.R.Evid., and State v. Phelps (1985), 215 Mont. 217, 696 P.2d 447. We conclude that Haskins' arguments are without merit.

Rule 601, M.R.Evid., provides that every person is competent to be a witness unless disqualified on the basis of a judicial

6

finding that the witness is incapable of expression concerning the matter so as to be understood by the judge and jury or incapable of understanding the duty of a witness to tell the truth. The record fails to disclose any judicial finding that Nelson was disqualified under either requirement. Haskins cites no authority that would require the trial court to disqualify the witness, sua sponte, after the witness has testified, simply because of inconsistencies in the witness' testimony. Indeed, were that the rule, the testimony of very few witnesses would survive disqualification.

Nor does State v. Phelps, support Haskins' position. In that case we affirmed the district court's finding that a five year old witness was competent to testify, noting that competence of the witness is unaffected by inconsistencies in perception but rather is determined by capacity of expression and appreciation of the duty to tell the truth. Phelps, 696 P.2d at 453. Moreover, it is axiomatic that inconsistencies in a witness' testimony go to the matter of credibility, not competence to testify. State v. Newman (1990), 242 Mont. 315, 321, 790 P.2d 971, 974.

Finally, Nelson's appreciation of his duty to tell the truth is not necessarily diminished by prior violations of the law. See, Commission Comments to Rule 609, M.R.Evid., "[t]he Commission does not accept as valid the theory that a person's willingness to break the law can automatically be translated into willingness to give false testimony."

Accordingly, we hold that Haskins has not demonstrated reversible error in his claim that undercover officer Nelson was

7

incompetent to testify as a witness.

> 3. Whether Haskins' conviction should be reversed because it was based solely upon the testimony of an undercover officer who was accountable for the same conduct for which Haskins was convicted?

Haskins contends that undercover officer Nelson, as the purchaser of dangerous drugs during the controlled buys, was legally accountable for the defendant's conduct as an accomplice and that, accordingly, Nelson's testimony was required to be corroborated by other evidence tending to connect the defendant with the commission of the offenses. Haskins cites §§ 45-2-301, 45-2-302 and 46-16-213, MCA.

Aside from the fact that Haskins did not raise this issue before the trial court--that failure being fatal, without more, to his raising this issue for the first time on appeal, (§§ 46-20-104 and 46-20-701, MCA)--our prior case law does not support his position, in any event. In State v. Godsey (1982), 202 Mont. 100, 108, 656 P.2d 811, 815, we rejected the argument that a person who was offered marijuana by the accused and who subsequently testified under a grant immunity from prosecution was rendered an accomplice and was legally accountable for defendant's possession of marijuana. Likewise, we reject Haskins' claim of error on this issue, and we hold that undercover officer Nelson was not legally accountable for defendant's sales of dangerous drugs.

> 4. Whether the Confederated Salish and Kootenai Tribes exceeded its jurisdiction in the investigation of Haskins by using undercover officer Nelson?

Haskins contends that the Indian tribal police officers who, as a result of their extended investigation, gathered the evidence

8

ultimately used in his conviction exceeded their authority. Haskins maintains that where the Indian tribe lacks criminal jurisdiction to prosecute a person for a criminal offense committed within the exterior boundaries of the reservation, the tribal police officers only have the power to detain and to promptly eject the offender and do not have the power to undertake a lengthy criminal investigation. We disagree.

As the United States Supreme Court pointed out in Duro v. Reina (1990), 495 U.S. 676, 680-81 n.1, 110 S.Ct. 2053, 2057, 109 L.Ed.2d 693, 700-01, jurisdiction in "Indian country" is controlled "by a complex patchwork of federal, state and tribal law." However, there is little question that, under the law as it presently stands, Indian tribes do not have criminal jurisdiction to prosecute non-Indians for crimes committed in Indian country. Oliphant v. Suquamish Indian Tribe (1978), 435 U.S. 191, 195, 98 S.Ct. 1011, 55 L.Ed.2d 209.

Moreover, with respect to crimes committed by non-Indians in Indian country, it is also clear that the prosecution of such offenses must be accomplished either by the federal government, (see 18 U.S.C. §§ 1152, 1153) or by the state. A state's ability to prosecute crimes committed by non-Indians in Indian country is limited, however. Basically, the State of Montana may not prosecute a criminal offense committed by a non-Indian in Indian country where the victim of the offense is an Indian or where Indian property is the subject of the offense. However, the State may prosecute a criminal offense committed by a non-Indian in

9

Indian country where the victim of the offense is a non-Indian or where the offense involves a "victimless" crime. See, State v. Greenwalt (1983), 204 Mont. 196, 663 P.2d 1178; Solem v. Bartlett (1984), 465 U.S. 463, 465, n.2, 104 S.Ct. 1161, 79 L.Ed.2d 443; State v. Thomas (1988), 233 Mont. 451, 760 P.2d 96; State v. Schaefer (1989), 239 Mont. 437, 781 P.2d 264; State ex rel. Poll v. Mont. 9th Jud. Dist. (1993), 257 Mont. 512, 851 P.2d 405; and LaPier v. McCormick (9th Cir. 1993), 986 F.2d 303.

Furthermore, the State may assume criminal jurisdiction over crimes committed in Indian country with the consent of the affected tribe under Public Law No. 83-280, Act of August 15, 1953, 67 Stat. 588 (1953), (PL 280). In Montana, the State has assumed PL 280 criminal jurisdiction on the Flathead Reservation. See, State ex rel. McDonald v. District Ct. of Fourth J.D. (1972), 159 Mont. 156, 496 P.2d 78; §§ 2-1-301, et seq. MCA; and Campbell v. Crist (D. Mont. 1980), 491 F.Supp. 586.

In this case, the State of Montana's jurisdiction to prosecute Haskins, a non-Indian, for his drug sales offenses committed within the exterior boundaries of the Flathead Reservation derives from the Tribe's inability to prosecute (Oliphant and Poll) and from the State's authority to prosecute, not only under PL 280 and §§ 2-1-301, et seq., MCA, but also since the offenses, sales of dangerous drugs through controlled undercover buys, were victimless crimes.

Accordingly, there is no question that the State had jurisdiction to prosecute Haskins for the criminal offenses which he committed within the exterior boundaries of the Flathead

10

Reservation. Contrary to the defendant's position, however, it does not then follow that since the State had criminal jurisdiction to prosecute Haskins, the tribal police officers were thereby precluded from investigating and gathering evidence of his offenses and then turning that evidence over to the proper jurisdiction with authority to prosecute his crimes.

Indian tribes have authority to enact ordinances regulating the conduct of their members and to employ law enforcement officers to enforce such ordinances and to maintain the peace. See, generally, Williams v. Lee (1959), 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251. See also, United States v. Wheeler (1978), 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 305; Montana v. United States (1981), 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493. Moreover, tribal police officers have the power to restrain non-Indians who commit offenses within the exterior boundaries of the reservation and to eject them by turning such offenders over to the proper authority with jurisdiction to prosecute. Duro, 495 U.S. at 697, 110 S.Ct. at 2065-66, 109 L.Ed.2d at 711; State v. Horseman (1993), 263 Mont. 87, 96, 866 P.2d 1110, 1116.

Incident to those powers of the tribe, tribal police also have authority to investigate violations of state and federal law. Ortiz-Barraza v. United States (9th Cir. 1975), 512 F.2d 1176. As stated by the Court, "[t]he power of the Papago to exclude non-Indian state and federal law violators from the reservation would be meaningless were the tribal police not empowered to investigate such violations. Obviously, tribal police must have such power."

11

Ortiz-Barraza, 512 F.2d at 1180.

The Washington Supreme Court addressed a similar issue as that raised by Haskins, in State v. Schmuck (Wash.1993), 850 P.2d 1332, cert. denied, ___ U.S.___, 114 S.Ct. 343, 126 L.Ed.2d 308. In Schmuck, the Washington Court addressed the authority of tribal authorities to stop a non-Indian who was driving a vehicle on a public road within the Suquamish Reservation. The court held that a tribal officer had authority to investigate a violation of state law prior to delivery of the offender to state law enforcement.

Similarly, in State v. Ryder (N.M.App. 1982), 649 P.2d 756, a tribal officer's detention and search of a non-Indian suspected of illegal drug possession pending arrival of a state police officer was upheld as a valid tribal power.

Finally, in State v. Zackuse (1992), 253 Mont. 305, 833 P.2d 143, we upheld the conviction of a non-Indian in a state court prosecution that was based on evidence gathered by a tribal police officer. That case involved a non-Indian defendant whose illegal drug sales activity on the Flathead Reservation was investigated by tribal officers. As here, a tribal police officer testified against the defendant in state district court trial which resulted in the defendant's conviction of criminal sale of dangerous drugs. Zackuse argued that the investigation of his illegal drug activities by tribal police exceeded the tribe's jurisdiction and authority; violated unspecified federal and state constitutional rights; and subjected him, a non-Indian, to tribal law. Zackuse 833 P.2d at 309. We disagreed and, while not analyzing that issue

12

in any depth, we noted that "[t]he fact that this criminal investigation was conducted by a tribal law enforcement officer has no relevance in determining the jurisdiction of this case."

Haskins distinguishes this line of cases by arguing that tribal authorities only have jurisdiction to detain the non-Indian offender for as long as is necessary to turn him over to state authorities. Here, according to Haskins, the tribal officers failed to detain and promptly eject him and failed to turn the evidence of his unlawful drug activity over to the State authorities after the first drug sale. Instead, argues Haskins, the tribal police officers exceeded their authority by engaging in an extended and ongoing investigation and in gathering evidence of subsequent drug sales.

Haskins draws a distinction that we are simply not willing to accept. We are not cited to any authority that so limits the authority of tribal law enforcement to investigate and gather evidence of criminal activities on the reservation. While tribal authorities have jurisdiction to detain and eject a non-Indian offender, it does not follow that the non-Indian offender has a "right" to immediate detention and ejectment. Since tribal police officers have authority to investigate unlawful criminal activity on the reservation, then it is reasonable that they would also have authority to conduct a proper and thorough investigation, to gather the evidence necessary for a successful prosecution and then, in due course, to turn that evidence over to the proper jurisdiction with authority to prosecute any non-Indians involved.

13

Haskins fails to point to any authority directly supporting his position or to any State or federal constitutional right that was violated by the manner in which the tribal officers proceeded in this case. Haskins was not detained, arrested, prosecuted or sentenced by any tribal authorities; none of his constitutional rights concerning detention, search and seizure, arrest or prosecution were implicated by the conduct of the tribal officers involved in this case. The evidence used against Haskins at trial was admissible evidence. The fact that admissible evidence was gathered by peace officers employed by a jurisdiction without authority to prosecute does not render the evidence per se inadmissible for use by a jurisdiction with such authority. Under the circumstances here, we conclude that Haskins has not demonstrated reversible error as to this issue, and we hold that the Confederated Salish and Kootenai Tribe did not exceed its jurisdiction in this case.

5.    Whether cumulative error warrants a new trial?

Having found no reversible error in any of the above issues raised by Haskins, nor in the issues raised in Haskins I, any consideration of his claim of cumulative error is moot. Accordingly, Haskins' conviction is, in all respects, and the District Court's denial of his motions for new trial are AFFIRMED.

_____
                                    Justice

We Concur:

_____
        Chief Justice

14

Karla M. Gray

William E. Hunt

Justices

December 21, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


William F. Hooks
State Appellate Defender
P. O. Box 200145, Capitol Station
Helena, MT 59620-0145

Hon. Joseph P. Mazurek, Attorney General
John Paulson, Assistant
215 N. Sanders, Justice Building
Helena, MT 59620

Larry J. Nistler,
County Attorney
106 4th Avenue E.
Polson, MT 59860

John B. Carter and Daniel Belcourt
Tribal Legal Department
Confederated Salish and Kootenai Tribes
P.O. Box 278
Pablo, MT 59855

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy