Argued and submitted May 28, affirmed July 2, 1997

STATE OF OREGON,
*Respondent,*

*v.*

JONATHAN EDGAR HAYNES,
*Appellant.*

(95C-23117, 95C-22815; CA A93236 (Control), A93237)
(Cases Consolidated)

942 P2d 295

Louis R. Miles, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals his convictions on three counts of arson in the first degree. We affirm, writing only to address his argument that the trial court should have granted his motions for judgment of acquittal on two of the charges on the ground that the state failed to establish that the two churches that he burned were "protected property" within the meaning of ORS 164.305(2).

In the early hours of a Saturday morning, defendant set fire to two churches in Silverton, Oregon. The churches were not occupied at the time of the fire. Defendant was charged with first-degree arson. The crime is defined in the following terms:

"(1) A person commits the crime of arson in the first degree if, by starting a fire or causing an explosion, the person intentionally damages:

"(a) Protected property of another."

ORS 164.325. "Protected property" is defined in ORS 164.305(2):

"[A]ny structure, place or thing customarily occupied by people, including 'public buildings' as defined by ORS 479.010 and 'forestland,' as defined by ORS 477.001."

ORS 479.010, in turn, defines "public buildings" as:

"[A] building in which persons congregate for civic, political, educational, religious, social or recreational purposes, including, among others, * * * churches * * *."

ORS 477.001 defines "forestland" as:

"[A]ny forested land, woodland, brushland, timberland, cut-over land or clearing, which, during any time of the year, contains enough flammable forest growth, forest refuse, slashing or forest debris to constitute a fire hazard."

At the close of the state's case, defendant moved for a judgment of acquittal on the charges that he burned the two churches. He argued that the evidence did not support convictions on charges of first-degree arson, because the statutory definition of the crime requires proof that the churches

were customarily occupied at the time of the fire, and the state offered no such evidence. The state responded that the statute requires only that defendant have intentionally set fire to "protected property," which is expressly defined as including churches, without reference to whether the buildings were occupied at the time of the fire. The trial court denied defendant's motion.

■　　　On appeal, defendant reiterates his argument that, to establish the crime of first-degree arson, the state must prove that a church that has been burned was customarily occupied at the time of the arson. Defendant argues that the text of the statute clearly defines "protected property" as a "structure, place or thing customarily occupied by people" and that the state's reading of the statute effectively ignores that portion of the statutory definition. Defendant places particular reliance on our opinion in *State ex rel Juv. Dept. v. Roff*, 94 Or App 430, 765 P2d 244 (1988), which he reads as holding that only structures customarily occupied at the time of the fire may be considered "protected property" within the meaning of the statute. The state argues that *Roff* was decided incorrectly and that, in any event, it is distinguishable because this case involves the burning of a church, which the statute expressly states is "protected property" within the meaning of the statute. The issue is thus the intended meaning of the statutory term "protected property," which we ascertain by examining the text of the statute in its context and, if necessary, its history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

　　　　The statute defines the term at issue—"protected property"—in two different ways. First, it spells out what the term *means*. Second, it specifies what the term *includes*. It bears emphasis that stating what a term means is not the same as stating what it includes. The former describes generally what a term is intended to express or signify. The latter describes in particular those things that are contained in or embraced by the term. *See generally Webster's Third New International Dictionary* 1143, 1398-99 (unabridged 1993) (defining "include" and "meaning"). It is fairly common for the legislature to employ either or both in defining a term; the Oregon Revised Statutes contain over 300 examples of

the practice of defining a term both in terms of what it means and what it specifically includes.[1] And, although it may seem somewhat counter-intuitive, it likewise is fairly common for the legislature to specify that a statutory term includes something that does not fit neatly into what the term generally means. For example, the partnership statute provides that an "officer" *means* an individual who "is or was serving at the corporation's request as a director, officer, partner, trustee, employee or agent" of a corporation. The statute then goes on to say that the same term *includes* the "personal representative of an officer," even though the personal representative does not serve at the corporation's request in any of the listed capacities. ORS 60.387(5).[2] The fact is, whether it makes linguistic sense or not, the legislature frequently specifies what a statutory term definitely includes and also provides a general definition of what the term means *apart from those things specifically enumerated.*

---

[1] *See, e.g.*, ORS 12.410(1) (" 'Claim' means a right of action that may be asserted in a civil action or proceeding and includes a right of action created by statute."); ORS 23.175(2) (" 'Earnings' means compensation paid or payable for personal services * * * and includes periodic payments pursuant to a pension or retirement program."); ORS 40.235(1)(c) (" 'Physician' means a person authorized and licensed or certified to practice medicine * * * [and] includes licensed or certified naturopathic and chiropractic physicians."); ORS 60.801(2) (" 'Acquiring person' means a person who acquires or proposes to acquire ownership of, or the power to direct the voting of, voting shares of an issuing public corporation and includes all affiliates of such person."); ORS 343.035(14) (" 'School district' means a common or union high school district or an education service district * * * and includes the Department of Education * * *."); ORS 366.005(7) (" 'State highway' means any road or highway designated as such by law * * * and includes both primary and secondary state highways."); ORS 377.605(6) (" 'Junkyard' means any establishment or place of business where there is accumulated on the premises eight or more motor vehicles or an equivalent volume of junk * * * and the term includes automobile graveyards * * *."); ORS 659.400(3) (" 'Employer' means any person who employs six or more persons and includes the state * * *."); ORS 689.765(10)(b) (" '[D]rug sample' means a unit of a drug * * * and includes a coupon or other form which may be redeemed for a drug.").

[2] *See also* ORS 173.770(3) (" 'rule' means any directive, standard or statement of general application * * * and includes amendment or repeal of a prior rule"); ORS 179.610(6) (" '[p]ersonal estate' means all income and benefits as well as all assets * * * of a living person, and includes assets held by the person's authorized representative"); ORS 243.005(1) (" '[f]irefighter' means persons employed by a city, county or district whose duties involve fire fighting and includes a volunteer firefighter"); ORS 657.056(3) (" 'American vessel' means any vessel documented or numbered under the law of the United States and includes any vessel which is neither documented nor numbered under the laws of the United States * * * if its crew is employed solely by one or more citizens or residents of the United States.").

In the case before us, the legislature has defined "protected property" to mean "any structure, place or thing customarily occupied by people." ORS 164.325(2). It then added that the term includes two things: "public buildings" and "forestland," both defined in cross-referenced statutes. It could be, as defendant suggests, that the reference to "public buildings" was intended to fit within the more general definition of what the statute states the term "protected property" means. That is to say, it is at least plausible that "public buildings" are "protected property" only to the extent that they are—consistent with the general definition of what "protected property" means—customarily occupied by people. On the other hand, as we have noted, that is not always the case. It could well be that the legislature intended "public buildings," such as churches, to be considered "protected property" within the meaning of ORS 164.325(2) regardless of whether there is evidence that they are customarily occupied by people at all, much less at the time of the fire.

■   The structure of the statutory definition as a whole strongly suggests that the legislature intended that "public buildings" such as churches be regarded as "protected property," whether they are customarily occupied by people or not. To begin with, the statute states that such "public buildings" are included within the meaning of "protected property" without explicit textual reference to the qualifier "customarily occupied by people." The legislature could have stated that the term "protected property" includes only "public buildings" that are customarily occupied by people. For whatever reason, it did not do that. In addition, the statute provides that "protected property" includes not just "public buildings," but also "forestland," which is expressly defined without reference to people. It thus seems obvious that the legislature intended the burning of "forestland" to constitute the burning of "protected property" within the meaning of the arson statute. It is highly unlikely, given the parallel reference to "public buildings," that the legislature intended that category of property to be treated differently.

Reference to the legislative history removes any doubt that what is strongly suggested by the language of the statute is, in fact, what the legislature intended it to mean. The arson statute originally was enacted as part of the 1971

Criminal Code revisions. The Commentary to the proposed revisions explains:

> "(1) 'Protected property.' This definition is similar to the definition of 'building' in the burglary and criminal trespass article so far as it relates to structures occupied by people. *However, it also includes 'public buildings' and 'forestland,' the intentional burning of which would constitute arson in the first degree * * *.* The purpose of this definition is to protect those structures or things which typically are occupied by people, and is consistent with the primary rationale of the crime of arson: protection of human life or safety. The Commission believes that forest fires ordinarily present a high degree of risk to human safety as well as causing serious economic loss to the state; therefore, the intentional starting of such a fire should be considered as one of the most serious arson offenses. *Arson of a public building, of course, would probably endanger human life, as well as causing irreparable damage to cherished property and public records and deserves to be treated as arson in the first degree.*"

*Proposed Oregon Criminal Code* § 141 (commentary) at 147 (1970) (emphasis supplied). Thus, in the views of the authors of the Commentary, on which the legislature heavily relied in the enactment of the revisions, *State v. Miller*, 309 Or 362, 370, 788 P2d 974 (1990); *State v. Huntley*, 302 Or 418, 423-24, 730 P2d 1234 (1986), burning of a public building, even one that is empty at the time of the fire, automatically is regarded as arson in the first degree.

At least at first blush, *Roff* may appear somewhat at odds with our examination of the intended meaning of ORS 164.325(2). In that case, the defendant was charged with attempted first-degree arson following his attempt to set afire a cabinet-making shop before business hours early in the morning. The defendant argued that the state had failed to prove that the shop was "protected property" within the meaning of the statute, because there was no evidence that the structure was customarily occupied by people at the time of the fire. We agreed with the defendant:

> "When a structure is a commercial establishment and the evidence shows that employees or the public were not regularly on the premises at the time the fire was set, the

trier of fact can find that at the time of the fire the commercial establishment was not customarily occupied by the people. Thus, even though a building is regularly occupied by people, it may be protected property only part of the time."

*Id.* at 432 (citations omitted). We note, however, that *Roff* did not involve a church or any other "public building" within the meaning of the statute. The case, instead, involved a structure that implicated the more general definition, which does expressly require customary occupation by people to constitute "protected property." Accordingly, the decision is not germane to the issue before us in this case, and we decline the state's invitation to reexamine its validity.

We conclude that the trial court correctly denied defendant's motion for judgment of acquittal.

Affirmed.