Argued and submitted November 26, 1997, affirmed September 30, 1998

# STATE OF OREGON,
*Respondent,*

*v.*

# DARL GUY PAMPERIEN,
*Appellant.*

## (95CR0289; CA A94761)

967 P2d 503

Eric Johansen, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Janet A. Klapstein, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, Virginia L. Linder, Solicitor General, and Jeffrey Derman, Certified Law Student.

Before Riggs, Presiding Judge pro tempore, and Landau and Wollheim,* Judges.

RIGGS, P. J. pro tempore.

Landau, J., concurring.

---

* Wollheim, J., *vice* Leeson, J., resigned.

**RIGGS, P. J. pro tempore.**

Plaintiff appeals from his judgment of conviction for driving while suspended. ORS 811.175(1). He assigns error to the trial court's denial of his motion to suppress evidence obtained during a traffic stop. We affirm.

On June 1, 1995, Officer Pritchard of the Warm Springs Tribal Police Department was patrolling Highway 26 in Jefferson County, within the borders of the Warm Springs reservation. Pritchard observed defendant's vehicle speeding on Highway 26. The officer clocked the vehicle with the radar unit in his patrol car, which indicated that its speed was 75 miles per hour, well above the posted state speed limit of 55. After stopping the vehicle, Pritchard approached and asked the driver for his driver's license. Defendant replied that he did not have an Oregon license and produced an expired tribal driver license. Although defendant is not a member of the Confederated Tribes of Warm Springs, or of any other tribe, he is married to a Warm Springs tribal member and lives on the reservation.

Pritchard returned to his patrol car and made a radio request for a report on defendant's driving status. That report revealed that defendant's state driver's license was suspended and also that there was an outstanding Wasco County warrant for his arrest for felony driving while suspended. The officer returned to defendant's vehicle, arrested him, and transported him to Warm Springs Jail. At the jail, Pritchard issued defendant two tribal citations and also cited him in Jefferson County Court for driving while suspended.[1] Before his trial on that charge in Jefferson County Court, defendant moved to suppress all evidence obtained during the stop of his vehicle. The court denied that motion, and defendant was subsequently convicted after a jury trial.

On appeal, defendant assigns error to the denial of his motion to suppress. We are bound by the trial court's findings of fact so long as there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66,

---

[1] The Jefferson County Court proceeding stemming from that citation is the basis of this appeal. Neither the two tribal citations nor the Wasco County warrant is at issue here.

75, 854 P2d 421 (1993). We review legal conclusions for errors of law. *Id.* A trial court may be "right for the wrong reason"; in other words, we may affirm on grounds different from those on which the trial court based its decision, so long as there is evidence in the record to support those alternate grounds. *State v. Nielsen*, 316 Or 611, 628-32, 853 P2d 256 (1993).

■ Defendant's sole argument is that Pritchard could not lawfully stop him for speeding. Tribal police officers, defendant contends, have no authority under state law to perform traffic stops or to investigate violations of the state traffic code. According to defendant, ORS 810.410, the statutory provision governing traffic stops, only grants authority to perform such stops to "police officers."[2] The term "police officer" is defined in ORS 801.395, which states: " 'Police officer' includes a member of the Oregon State Police, a sheriff, a deputy sheriff or a city police officer." Because tribal police officers are not mentioned in that list, defendant argues, they are not authorized to stop drivers for violations of state traffic laws. On that ground, he urges that we must suppress all evidence obtained during Pritchard's stop of defendant, assumedly because Pritchard exceeded his statutory authority by initiating the stop. *See, e.g., State v. Dominguez-Martinez*, 321 Or 206, 214, 895 P2d 306 (1995) (evidence obtained by officer who exceeded statutory authority suppressed).

Even if we agreed with defendant's statutory interpretation, his argument would still fail. The authority of tribal police officers to stop drivers for speeding within the borders of the reservation does not derive from ORS 810.410. Rather, it derives from the tribe's inherent power as sovereign to maintain public order on the reservation.

Of course, as the concurrence notes, our usual practice is to review questions of state law before we reach federal questions like tribal sovereignty. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983). However, that methodology

---

[2] *See* ORS 810.410(3)(b), which provides:

"(3) A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic infraction for the purposes reasonably related to the traffic infraction, identification and issuance of citation."

presupposes the existence of a potentially dispositive issue of state law. Here, there is no such issue. Regardless of our resolution of defendant's state statutory argument, Pritchard had unquestioned authority under federal law to perform the traffic stop. Accordingly, we would not reverse the trial court based on defendant's state statutory arguments, and we see no benefit in addressing them. To illustrate: If defendant is correct that tribal officers are not "police officers" under ORS 801.395, we still would be required to hold that controlling federal authority made the stop permissible. If defendant is wrong, and tribal officers *are* "police officers," then the most we could say is that ORS 810.410 provides supplemental authority for a stop already permitted under controlling federal law. Under those circumstances, we believe that the better course is to decline to decide the statutory interpretation question that defendant poses, given that neither possible interpretation could lead us to the result defendant seeks.

**5.**     Within the borders of their reservations, Indian tribes possess certain inherent sovereign powers, which they "enjoy[ ] apart from express provision by treaty or statute." *Strate v. A-1 Contractors*, 520 US 438, 117 S Ct 1404, 1409, 137 L Ed 2d 661 (1997). Those powers are retained attributes of tribes' historic status as "self-governing sovereign political communities." *United States v. Wheeler*, 435 US 313, 322-23, 98 S Ct 1079, 55 L Ed 2d 303 (1978). While their authority has been significantly diminished, "Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status." *Id.* at 323.

■     Tribal sovereignty is limited; it does not, for example, allow tribal courts to exercise criminal jurisdiction over non-Indians. *Oliphant v. Suquamish Indian Tribe*, 435 US 191, 212, 98 S Ct 1011, 55 L Ed 2d 209 (1978).[3] However, the more

---

[3] The limited nature of tribal sovereignty is the basis for our other primary disagreement with the concurrence. If, as the concurrence argues, tribal officers are "police officers" under ORS 801.395, then *all* of ORS 810.410 applies to tribal officers. Such a ruling would have implications far beyond the narrow facts of this case. For example, ORS 810.410(1) allows a police officer to "arrest or issue a citation to a person for a traffic crime at any place within *or outside the jurisdictional authority of the governmental authority by which the police officer is authorized to act* * * *." (Emphasis added.) In other words, if the concurrence is correct in its reading of the statutes at issue here, then ORS 810.410 grants tribal officers the right to arrest nonmembers of the tribe *off the reservation* for violations of state

limited power at issue in this case—the power to maintain public order by investigating violations of state law on the reservation—is clearly an incident of general tribal sovereignty. Courts repeatedly have found that tribal officers have inherent authority to do exactly as Pritchard did here, irrespective of any state statutory grant of policing authority. In *Duro v. Reina*, 495 US 676, 697, 110 S Ct 2053, 109 L Ed 2d 693 (1990), the United States Supreme Court stated that

> "[t]ribal law enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, to eject them. Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities."

The Court reaffirmed that principle in a 1997 decision:

> "We do not here question the authority of tribal police to patrol roads within a reservation, including rights of way made part of a state highway, and to detain and turn over to state officers nonmembers stopped on the highway for conduct violating state law." *Strate*, 117 S Ct at 1414 n 11.

The same result also has been reached by other federal and state courts that have confronted the issue before us. *See, e.g.*, *Ortiz-Barraza v. United States*, 512 F 2d 1176, 1180 (9th Cir 1975) (recognizing "the authority of a tribal police officer * * * to investigate any on-reservation violations of state and federal law"); *State v. Schmuck*, 121 Wash 2d 373, 386-87, 850 P2d 1332 (1993) (same); *State v. Haskins*, 269 Mont 202, 210, 887 P2d 1189 (1994) (same).

We agree with those cases and hold that Pritchard's stop of defendant was proper. Warm Springs tribal law enforcement officers have the authority to investigate on-reservation violations of state and federal law as part of the tribe's inherent power as sovereign[4] and may detain violators

---

law. While we know of no federal case law forbidding such a result, it clearly would represent a grant of authority to tribal officers far in excess of anything mandated by tribal sovereignty.

Our point is not that the concurrence is wrong in its reading of ORS 810.410, but rather that the question of the status of tribal officers under that provision is not as "simple" as the concurrence asserts. In the presence of clear and controlling federal law, then, we believe that the prudent choice is to decline defendant's invitation to decide the status of tribal officers under the state traffic code.

[4] The fact that defendant was stopped on a state highway within the reservation does not affect the outcome of this case. Highway 26 passes through the Warm

and turn them over to the proper officials if jurisdiction to prosecute the offense rests outside the tribe. Accordingly, defendant's argument that Oregon statutes provide no independent authority for tribal officers to make such a stop is beside the point. Tribal sovereign powers exist independent of state statute. While those powers are limited, they repeatedly have been found to provide a basis for the exercise of police authority at issue in this case. The trial court did not err in denying defendant's motion to suppress.

Affirmed.

**LANDAU, J.,** concurring.

Defendant's sole argument on appeal is that Tribal Officer Pritchard could not lawfully stop him because ORS 810.410 does not confer such authority on tribal officers. The majority declines to address that state statutory argument and instead disposes of the appeal on federal constitutional grounds not argued by defendant or the state. That method of analysis is contrary to well-settled principles that require a "first things first" approach: first statutory arguments, then constitutional ones, *State v. Moylett*, 313 Or 540, 545, 836 P2d 1329 (1992) ("All issues should first be addressed on a subconstitutional level."); first state law arguments, then federal ones, *State v. Kennedy*, 295 Or 260, 264, 666 P2d 1316 (1983) ("[A] practice of deciding federal claims without attention to possibly decisive state issues can create an untenable position for this state's system of discretionary Supreme Court review."). It is also contrary to our practice of addressing only arguments raised by the parties unless the proper construction of relevant statutes requires us to do otherwise. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

The majority's disposition of this case is especially surprising because defendant's argument may be so easily disposed of. Defendant contends that Pritchard lacked

---

Springs reservation on a state right-of-way. However, such rights-of-way are still included in "Indian country," within which tribes may exercise their jurisdiction and sovereign powers. *See* 18 USC § 1151 (defining "Indian country" to include all land within the geographical boundaries of a reservation, "notwithstanding the issuance of any patent, and, including rights-of-way"); *Strate*, 117 S Ct at 1414 n 11 (recognizing that tribal police jurisdiction to investigate state crimes includes state rights-of-way within a reservation); *Ortiz-Barraza*, 512 F 2d at 1180 (same).

authority to effect a traffic stop. According to defendant, under ORS 810.410, only "police officers" have authority to effect a traffic stop, and, under the definition provided in ORS 801.395, that term "includes a member of the Oregon State Police, a sheriff, a deputy sheriff or a city police officer." Defendant reasons that, because tribal officers are not mentioned in the definition, they are not to be regarded as "police officers" who are authorized to conduct traffic stops. Defendant's reasoning is flawed for a simple reason. The statutory definition of "police officer" states a nonexclusive list of what is *included* within the meaning of the term. ORS 801.395. It does not state the exclusive limits of the term. Defendant's argument thus is predicated on a failure to recognize the difference between statutory definitions that express what terms "mean" and what terms merely "include." *See, e.g., Pilgrim v. Clatskanie People's Utility Dist.*, 149 Or App 234, 238-39, 942 P2d 821, *rev den* 326 Or 389 (1997); *State v. Haynes*, 149 Or App 73, 76-77, 942 P2d 295 (1997).

The majority professes reluctance to address the solitary statutory argument that the parties contest because doing so might have constitutional implications, albeit ones not raised by any party. I must confess that I cannot follow the logic of skipping our usual practice of deciding nonconstitutional issues first merely because failing to do so *might* trigger constitutional issues that were not raised by the parties. It strikes me that the better course is to address the statutory arguments raised by the parties and address any constitutional implications in a case in which parties bring such matters properly before us.

In my view, the majority's decision to resort to federal constitutional principles is unnecessary and inappropriate. I therefore respectfully concur with the result of the majority's decision, but not with its reasoning.