Argued and submitted July 31, 2001, reversed and remanded November 13, 2002, petition for review denied April 8, 2003 (335 Or 355)

# STATE OF OREGON,
*Appellant,*

*v.*

# WILLIAM PAUL SCHAFF,
*Respondent.*

9905145A; A108960

57 P3d 907

Janet A. Klapstein, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Rebecca A. Duncan, Deputy Public Defender, argued the cause for respondent. With her on the brief was David E.

Groom, Acting Executive Director, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

**WOLLHEIM, J.**

Defendant was charged with driving under the influence of intoxicants (DUII), ORS 813.010, and possession of less than an ounce of marijuana, ORS 475.992. The trial court granted defendant's motion to suppress the results of his breath test. The state appeals and assigns error to the trial court's order. We reverse and remand.

In July 1998, defendant was stopped for speeding on the Burns Paiute Indian Reservation by Zacarias, an officer of the Burns Paiute Tribal Police. Zacarias was deputized by neither the Harney County Sheriff nor the Burns Police Department, and defendant is not an enrolled member of the Burns Paiute tribe. After stopping defendant, Zacarias developed probable cause to believe that defendant was driving under the influence of intoxicants, arrested defendant, and transported him to the Harney County Jail in Burns. At the jail, defendant consented to take an Intoxilyzer breath test, and Zacarias administered the test. Zacarias held a breath test permit issued by the Department of State Police (State Police), which established that she was trained and certified by the State Police to operate the Intoxilyzer. Defendant's breath test showed a .10 blood alcohol content.

At trial, defendant moved to suppress the results of the breath test. Defendant argued that Zacarias did not have a valid permit and could not administer a breath test because (1) ORS 813.160(1)(b) requires the person administering the test to have a valid permit; (2) OAR 257-030-0080 requires that to obtain a permit a person must be a "police officer as defined in ORS 801.395"; and (3) Zacarias did not fall within that definition of "police officer." The court granted the motion to suppress and issued an order excluding the contested evidence on the grounds that the tribal officer "was not legally qualified to administer such a test." The state appeals from that order.

On appeal, the state assigns error to the trial court's suppression of the breath test evidence. The state argues that ORS 813.160 requires the person administering the test to have a valid permit and to use prescribed methods. According to the state, Zacarias met those requirements. Further, to

whatever extent the statute requires a person to be a "police officer," the state contends that tribal police officers are "police officers." Defendant argues that the statute requires a *valid* permit and that for a permit to be a *valid* permit, the statute and the administrative rules require the person to be a "police officer." According to defendant, tribal police officers are not "police officers" under the Vehicle Code and, therefore, Zacarias did not have a valid permit.[1]

Thus, this case presents two questions. We must first determine the meaning of the term "valid permit." Specifically, we must determine whether a permit, to be considered valid, may be issued only to a "police officer." If only a "police officer" may hold a valid permit, we must then determine whether tribal police officers are included within the definition of "police officer."

To determine the meaning of the phrase "valid permit," we must interpret the relevant statutes according to the methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Our goal is to determine the intent of the legislature. At the first level of analysis, we examine the text and context of the applicable statutes. *Id.* at 611. If the legislature's intent is clear, our analysis ends. *Id.*

Under ORS 813.100, a driver arrested for DUII impliedly consents to taking a breath test to determine the driver's blood alcohol content.[2] Breath test results are admissible at trial as evidence that the driver of a vehicle was under the influence of intoxicants. ORS 813.300. ORS 813.160 sets forth the requirements for a valid breath test and provides, in part:

"(1)  *To be valid* under ORS 813.300:

"* * * * *

---

[1] Defendant does not dispute that Zacarias's stop of defendant was lawful. *See State v. Pamperien*, 156 Or App 153, 158-59, 967 P2d 503 (1998) ("[T]ribal law enforcement officers have the authority to investigate on-reservation violations of state and federal law as part of the tribe's inherent power as sovereign and may detain violators and turn them over to the proper officials if jurisdiction to prosecute the offense rests outside the tribe.").

[2] We note that defendant did not, either at trial or on appeal, dispute the voluntariness of his consent.

"(b)   Chemical analyses of a person's breath *shall be performed by an individual possessing a valid permit to perform such analyses* issued by the [State Police] and shall be performed according to methods approved by the [State Police]. For purposes of this paragraph, the [State Police] shall do all of the following:

"(A)   Approve methods of performing chemical analyses of a person's breath.

"(B)   Prepare manuals and conduct courses throughout the state for the training of police officers in chemical analyses of a person's breath, which courses shall include, but are not limited to, approved methods of chemical analyses, use of approved equipment and interpretation of test results together with a written examination on these subjects.

"(C)   Test and certify the accuracy of equipment * * *.

"(D)   Ascertain the qualifications and competence of individuals to conduct such analyses in accordance with one or more methods approved by the department.

"(E)   Issue permits to individuals according to their qualifications. Permits shall be issued to police officers only upon satisfactory completion of the prescribed training course and written examination. A permit shall state the methods and equipment which the police officer is qualified to use. Permits shall be subject to termination or revocation at the discretion of the [State Police]."

(Emphasis added.) On its face, ORS 813.160(1)(b) contains a foundational requirement for admissibility—*i.e.*, "to be valid." *See State v. Warner*, 181 Or App 622, 634, 47 P3d 497, *rev den*, 335 Or 42 (2002) (using ORS 813.160(1) "to be valid" language as an example of a foundational requirement); *State v. Chipman*, 176 Or App 284, 294, 31 P3d 478 (2001). Specifically, to be admissible in a criminal proceeding, a breath test must have been conducted in accordance with certain statutory procedures. *See, e.g., State v. Thompson-Seed*, 162 Or App 483, 489-90, 986 P2d 732 (1999).

One of the enumerated statutory procedures is that the breath test "shall be performed by an individual possessing a valid permit to perform such analyses issued by the [State Police] * * *." ORS 813.160(1)(b). While ORS 813.160

does not define the meaning of "valid permit," it does provide that tests shall be performed by *individuals*. Further, ORS 813.160(1)(b)(E) directs the State Police to "[i]ssue permits to *individuals* according to their qualifications." (Emphasis added.) Defendant points to language following that directive that provides that "[p]ermits shall be issued to police officers only upon satisfactory completion of the prescribed training course and written examination." That language provides a condition precedent to issuance of permits to police officers. However, it does not limit issuance of permits only to police officers. Further, the legislature's use of "police officer" in parts of ORS 813.160 demonstrates that the legislature was capable of using that term rather than the term "individual."

Thus, we do not find any support in the statutes for defendant's limiting construction that permits shall be issued only to police officers. Because we may not add what has been omitted from a statute, ORS 174.010, we cannot add such a limitation. For the above reasons, we find that the legislature did not intend to limit issuance of permits to only police officers. Thus, even if tribal police officers are not "police officers" under the vehicle code, they are not prohibited by the statutes from possessing a valid permit.

Defendant also cites OAR 257-030-0080, which implements the directives to the State Police in ORS 813.160 by establishing the "Qualifications of Breath Test Equipment Operators." OAR 257-030-0080 provides:

"(1)   No individual shall operate approved breath testing equipment to determine the alcoholic content of the blood of a person in accordance with the provisions of ORS 813.160 *unless that individual has been issued a permit to operate such equipment by the OregonState Police.*

(2)   *To qualify for training and to obtain a permit for the operation of approved breath testing equipment, an individual must be a police officer as defined in ORS 801.395* or a trained technician of the Oregon State Police. The term police officer includes reserve police officer."

(Emphasis added.) We are not persuaded that this rule supports defendant's position. Subsection (1) discusses operation of breath testing equipment and requires that an *individual* not operate equipment unless that *individual* "has been

issued a permit to operate such equipment by the [State Police]." Like ORS 813.160, the administrative rule refers expressly to individuals rather than "police officers." Subsection (2) does not relate to qualifications for operating equipment, but rather relates to the availability of training by the State Police. Arguably, if Zacarias is not a "police officer as defined in ORS 801.395," the State Police could have refused to train Zacarias. However, we need not decide that issue because Zacarias was trained by the State Police, was issued a permit to operate the Intoxilyzer, and, therefore, was qualified and authorized to operate the Intoxilyzer pursuant to OAR 257-030-0080. If the State Police find it necessary to revoke Zacarias's permit, it has the discretion to do so. ORS 813.160(1)(b)(E). Short of that, Zacarias held a valid permit issued by the State Police and performed the breath test by an approved method.

For the above reasons, the results of the breath test were valid and the trial court erred in suppressing them.

Reversed and remanded.